467 So.2d 975 (1985)
Robert PATTEN, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 61,945.
Supreme Court of Florida.
January 10, 1985.
Rehearing Denied April 18, 1985.
William L. Richey, of Richie & Munroe, Coral Gables; and Peter M. Siegel and Randall C. Berg, Jr., Miami, for appellant/cross-appellee.
Jim Smith, Atty. Gen., and Calianne P. Lantz, Asst. Atty. Gen., Miami, for appellee/cross-appellant.
OVERTON, Justice.
This is a direct appeal from Robert Patten's conviction of first-degree murder and the imposition of the death sentence. Appellant was also convicted of armed robbery and grand theft, and was found to have violated his probation for the offense of auto theft. He was sentenced to 110 years for the robbery conviction, five years for grand theft, and five years for auto theft, all sentences to be served consecutively. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and we affirm all of appellant's convictions and sentences with the exception of the death sentence. We find that we must vacate the death sentence and remand for a new sentencing proceeding before a jury because the trial judge erroneously instructed the jury that it should try to reach a majority verdict after the jury had advised the court it was deadlocked concerning its sentencing recommendation for the first-degree murder conviction.
The facts reflect that on September 2, 1981, the victim, a Miami police officer, attempted to stop appellant for traveling the wrong way on a one-way street. Appellant abandoned his car, which was later determined to have been stolen, and fled the scene on foot. He ran down an alley *976 with the officer in pursuit. Witnesses heard gunshots and one witness testified that appellant had hidden in the alley and waited for the officer to approach before shooting him. The officer was found dead with two bullet wounds. One bullet had penetrated his heart, killing him instantly, and another had entered the officer's foot in a manner indicating that the officer had been shot after he was dead and lying prostrate.
Immediately after the shooting, appellant stole a car at gunpoint and fled the area. He was arrested later that day and charged with first-degree murder, armed robbery, grand theft, and violation of probation. Two days later, after obtaining a search warrant, the police recovered the murder weapon from beneath a heating grate in appellant's grandmother's home.
Prior to trial, the court and the prosecutor were apprised of the facts that appellant had been adjudicated not guilty of receiving stolen property by reason of insanity in 1978 and had been involuntarily committed to the Department of Health and Rehabilitative Services for treatment under the provisions of section 394.467, Florida Statutes (1977). On September 25, 1981, the trial court, on its own motion prior to appellant's arraignment, ordered an evaluation of the appellant "covering all issues including insanity and competency and incompetency to stand trial." Prior to receiving the reports of the four experts appointed to examine appellant, and prior to the hearing on appellant's competency to stand trial, counsel for the appellant withdrew a pending motion for release on bail and orally advised the trial court that the defense would be filing a notice of intent to rely on the insanity defense and would request a hearing to determine if appellant was mentally competent to stand trial. Counsel for appellant subsequently filed a notice of intent to rely on the insanity defense and a motion requesting a competency hearing.
The court-ordered competency hearing was held on October 9, 1981. Three of the appointed doctors testified before the court and the fourth doctor's written report was submitted to the court by stipulation. During the course of these proceedings, the 1978 trial court order finding appellant not guilty by reason of insanity and the orders conditionally releasing him were admitted into evidence. The trial court found, in accordance with the unanimous opinion of the experts, that the appellant was competent to stand trial pursuant to the criteria set forth in Florida Rule of Criminal Procedure 3.211. The trial court proceeded to arraign the appellant and, when he stood mute, entered a plea of not guilty on his behalf.
In a pre-trial motion, counsel for the appellant moved for a ruling on the insanity test to be applied at trial. Appellant asserted that the trial court should discard the M'Naghten rule and adopt the A.L.I. Model Penal Code test. While acknowledging that the appellant had been examined by a number of psychiatrists, all of whom indicated that the accused was legally sane under the M'Naghten rule, defense counsel argued that the M'Naghten rule constituted both a denial of substantive and procedural due process and cruel and unusual punishment. The trial court denied the motion, finding that it had no authority to change the criteria for the test for insanity that had been specifically adopted by the Supreme Court of Florida.
Counsel for the appellant also filed a pre-trial motion to have the electronic media excluded from the courtroom during the trial on the ground that their presence would affect the ability of the appellant to consult with his counsel. The trial court denied the motion after conducting a hearing attended by the state, the defense, and the media.
In the trial phase of the proceedings, the defense did not contest that appellant had killed the police officer; the theory of the defense was that appellant, in firing the shots, had acted "in a moment of panic" and that this tragic offense was not premeditated murder. Further, no evidence was submitted regarding appellant's prior adjudication of not guilty by reason *977 of insanity. The jury found the appellant guilty of all offenses charged.
During the sentencing phase of the trial, the state initially presented evidence in aggravation that appellant had been convicted of robbery in 1975. The defense then presented the testimony of two psychologists to establish the statutory mitigating circumstances that the murder was committed while appellant was "under the influence of extreme mental or emotional disturbance," section 921.141(6)(b), Florida Statutes (1981), and that the "capacity of defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired," section 921.141(6)(f). Both psychologists testified that these factors clearly applied to appellant. In addition to these conclusions, one psychologist described at length appellant's background and upbringing, including the fact that his mother had substantial mental problems, which resulted in her commitment; that he was an unwanted child; that he had suffered severe physical abuse, including being spit upon and thrown against the wall; that his father died when he was two years old; that, when appellant was six years old, it was discovered that he suffered from a degenerative bone disease which required him to spend a year in a body cast, during which time he continued to suffer physical abuse at the hands of his mother; that his leg was broken two days after the removal of his body cast and he was forced back into the body cast for more than eight months; that after returning to school his conduct required expulsion; that at age ten he was diagnosed as emotionally disturbed and another diagnosis recommended hospitalization; that his mother used choking as a disciplinary device; and that he began using drugs at an early age and suffered a barbiturate overdose at the age of fourteen. The history of the 1976 stolen property offense, his commitment as a result of being incompetent to stand trial, his acquittal on the charges by reason of insanity, and the resulting treatment were also presented to the jury. In rebuttal, the state presented the testimony of two psychiatrists who had examined appellant for competency to stand trial and insanity at the time of the offense. Both psychiatrists testified that appellant was able to conform his conduct to the requirements of law and both reflected an opinion that he was trying to fake mental illness.
During sentencing deliberations, the jury advised the trial judge that they were deadlocked six-to-six with regard to a recommended sentence. The judge instructed the jury:
If you can agree on a majority to either life or death, without trying to pressure you, by talking it over one more time and agreeing one way or another, and I'm not suggesting any result, but if after trying one more time you can't agree and it's still six/six, I will instruct you to go ahead and sign that verdict form that includes life imprisonment without parole for 25 years.
The jury, after continued deliberations, returned with a seven-to-five recommendation for death.
The trial judge imposed the death sentence and found that the following statutory aggravating factors applied: (1) appellant had previously been convicted of a felony involving the use or threat of violence; (2) the murder was committed to avoid a lawful arrest; and (3) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. In finding that there were no mitigating circumstances, the trial court expressly rejected the evidence presented by the appellant to prove that he had suffered from an extreme emotional or mental disturbance at the time of the homicide and that appellant's capacity to appreciate the criminality of his conduct was substantially impaired. The trial court recognized that the testimony of the experts for the state and for the defendant was "in direct contradiction" and expressly found that it should accept the testimony of the state's witnesses. The trial judge concluded that there were no statutory or nonstatutory mitigating factors applicable to this case.

*978 Guilt Phase

In his first point, appellant argues that his prior adjudication of not guilty by reason of insanity and his subsequent civil commitment require the state to present evidence to establish his sanity as an element of the offense even though appellant failed to offer any evidence of the insanity defense at trial. Counsel for appellant advised the court orally, after the court had appointed doctors to examine appellant but before the examinations were complete, that she planned to file a notice of intent to rely on the defense of insanity. Counsel subsequently filed a notice of intent to rely on the insanity defense. After all four court-appointed experts found appellant competent to stand trial and competent at the time of the offense under the state's modified M'Naghten test, counsel did not attempt to affirmatively assert the defense of insanity under that test. In our view, this was not an inadvertent omission by counsel. Facing the obvious improbability of a successful insanity defense under these circumstances, counsel instead sought to have the trial judge reject the modified M'Naghten test and adopt the broader criteria contained in the American Law Institute's Model Penal Code, including the "irresistible impulse" test. This Court has expressly rejected that portion of the A.L.I. insanity test that the appellant requested the trial court to accept. See Mines v. State, 390 So.2d 332 (Fla. 1980); In re Standard Jury Instructions in Criminal Cases, 327 So.2d 6 (Fla. 1976). The criteria adopted by this Court for insanity at the time of the offense are as follows:
The law does not hold a person criminally accountable for his conduct while insane, since an insane person is not capable of forming the intent essential to the commission of a crime. A person is sane and responsible for his crime if he has sufficient mental capacity when the crime is committed to understand what he is doing and to understand that his act is wrong. If at the time of an alleged crime a defendant was by reason of mental infirmity, disease or defect unable to understand the nature and quality of his act or its consequences or, if he did understand it, was incapable of distinguishing that which is right from that which is wrong, he was legally insane and should be found not guilty by reason of insanity.
Insanity may be permanent, temporary, or may come and go... .
... .
Unrestrained passion or ungovernable temper is not insanity, even though the normal judgment of the person may be overcome by passion or temper.
Fla. Std. Jury Instr. Crim. Cases, 2.11(b)-1 (S.Ct.Comm. 1976). See also Fla. Std. Jury Instr. Crim. Cases 3.04(b) (S.Ct. Comm. 1982).
We stated in Wheeler v. State, 344 So.2d 244, 246 (Fla. 1977), that this "jury instruction on insanity correctly states the law of Florida," and we directed that "it shall be utilized in all trials" after the date that opinion became final. In Wheeler, we explained that we had declined "to adopt the so-called `irresistible impulse' portion of the A.L.I. test which excuses from criminal responsibility the defendant who `lacks substantial capacity ... to conform his conduct to the requirement of the law,'" although we did adopt the "`disease or defects element' of the A.L.I. test."[1]Id. The trial court properly denied appellant's motion.
The position of the appellant, that the state in this cause had the initial burden of proving sanity, is neither logical nor reasonable. If we adopted appellant's position, the state would have been obligated to present the four expert witnesses who would have testified that appellant was sane at the time of the offense and, in so doing, they would have necessarily related the history of his prior criminal convictions and his commitment for psychiatric problems. *979 The production of this evidence by the state in its case in chief would be mandated under appellant's argument, even though the appellant had not placed his sanity in issue at the trial and the state's evidence of sanity would be prejudicial to the appellant. It is important to recognize that insanity is an affirmative defense in this state and a defendant has the burden of coming forward and presenting some evidence of insanity at trial. Under this process, once a defendant presents evidence of insanity, the prosecution has the burden of disproving defendant's claim beyond a reasonable doubt.[2] The argument that the appellant's prior adjudication of not guilty by reason of insanity and his involuntary civil commitment require the state to prove competency is correct only when the defense of insanity is asserted and evidence of the adjudication and commitment is introduced at trial. In this case the defense of insanity was not asserted, nor was the evidence of appellant's prior adjudication or commitment offered at trial. The reason for this is clear in the record. The appellant had no experts to testify as to his insanity. The state had four witnesses who concluded he was sane and two went further and stated that he was faking mental illness. The reason and logic for not asserting the defense of insanity is clear. We find no merit in appellant's argument.
Appellant's second point alleges that the trial court erroneously denied appellant's motion to exclude the electronic media, appellant's request for an evidentiary hearing, and appellant's request for the appointment of experts on this issue. The trial court held a hearing on the motion, during which the appellant, the state, and the media were present. The trial court determined that the facts set forth in the motion, if proven, would not justify the entry of a restrictive order and did not meet the criteria set forth in our decisions in State v. Green, 395 So.2d 532 (Fla. 1981), and In re Post-Newsweek Stations, Florida, Inc., 370 So.2d 764 (Fla. 1979). We agree. See also State v. Palm Beach Newspapers, Inc., 395 So.2d 544 (Fla. 1981).
The third issue raised by appellant concerns the failure of the trial court to suppress the introduction into evidence of the gun used to kill the police officer which was seized from underneath a heating grate in the appellant's grandmother's house. Appellant contends that the affidavit in support of the search warrant was insufficient to establish probable cause. We disagree. The affidavit was sufficient to establish probable cause and the trial court properly denied the motion to suppress.
Appellant's fourth point concerns rulings involving the exercise of the trial court's discretion. We find that the record does not demonstrate any abuse of discretion. See Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).
We have previously rejected appellant's fifth claim that alleges error in the denial of an evidentiary hearing on the issue of whether a death-qualified jury is also a guilt-prone jury. Dobbert v. State, 409 So.2d 1053 (Fla. 1982). We refuse to revisit this issue.

Sentencing Phase
The appellant raises eight issues concerning the sentencing phase of his trial. We address only his contention that it was reversible error for the trial judge to give the jury the "Allen charge"[3] after the jury had announced that it had become deadlocked during deliberations on whether to recommend a death or life sentence. In Rose v. State, 425 So.2d 521 (Fla.), cert. denied, 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983), we faced a similar situation. In that case we stated:
The record indicates that the charge was given after the jury advised the court by a note which read, "We are tied six to *980 six, and no one will change their mind at the moment. Please instruct us." At that point, the trial judge should have advised the jury that it was not necessary to have a majority reach a sentencing recommendation because, if seven jurors do not vote to recommend death, then the recommendation is life imprisonment. There was no reason to give the "Allen charge" during the penalty phase of the trial. We therefore vacate the death sentence and hold that defendant is entitled to a new sentencing proceeding before a jury.
Id. at 525. We find no logical distinction between the instant case and our Rose decision and hold that the case must be remanded for a new sentencing hearing. We do not find it appropriate to treat the jury recommendation as a life recommendation and the trial judge's sentence as a jury override, as urged by the state. There was no life recommendation in this case and the trial court did not, therefore, consider this significant factor in his sentencing decision. To now treat the jury recommendation as a life recommendation and review appellant's sentence without the benefit of the trial judge's consideration and application of the Tedder doctrine[4] would require this Court to make an assumption as to what sentence the trial judge would have imposed if the jury had actually returned a life recommendation. We decline to do so.
Accordingly, we affirm appellant's convictions and sentences with the exception of the death sentence. We vacate the death sentence and remand to the trial court for a new sentencing proceeding before a jury. In view of the evidence that was presented during the sentencing proceeding, we direct the trial court's attention to the United States Supreme Court decision in Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and its possible application to the facts of this case.
It is so ordered.
BOYD, C.J., and ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, J., concurs in the conviction, but dissents from the sentence.
NOTES
[1] The Florida standard for determining a defendant's competency to stand trial is essentially identical to the newly adopted A.B.A. Criminal Justice Mental Health Standard 7-6.1, A.B.A. Standards for Criminal Justice (2d ed. 1984).
[2] This procedure is in accordance with A.B.A. Criminal Justice Mental Health Standard 7-6.9, A.B.A. Standards for Criminal Justice (2d ed. 1984).
[3] Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).
[4] Tedder v. State, 322 So.2d 908 (Fla. 1975).