878 So.2d 368 (2004)
Robert PATTON, Appellant,
v.
STATE of Florida, Appellee.
Robert Patton, Petitioner,
v.
James V. Crosby, Jr., etc., Respondent.
Nos. SC02-423, SC02-2158.
Supreme Court of Florida.
May 20, 2004.
Rehearing Denied July 14, 2004.
*371 Todd G. Scher, Special Assistant CCRC  Southern Region, Miami, FL, and Suzanne Myers, Assistant CCRC, Capital Collateral Regional Counsel  Southern Region, Fort Lauderdale, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Sandra S. Jaggard, Assistant Attorney General, Miami, FL, for Appellee/Respondent.
PER CURIAM.
Robert Patton appeals an order of the trial court denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. He also petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons discussed below, we affirm the trial court's order denying postconviction relief, and we deny habeas relief.

The Facts
On September 2, 1981, a Miami police officer attempted to stop Patton for driving a car the wrong way on a one-way street. Patton abandoned the car, which had been stolen, and fled the scene on foot. He ran down an alley with the officer in pursuit. Patton hid in the alley and waited for the officer to approach before shooting him twice. One bullet penetrated the officer's heart, killing him instantly, and another entered the officer's foot in a manner which indicated that the officer had been shot after he was dead and lying prostrate.
Immediately after the shooting, Patton took a different car at gunpoint and fled the area. He was arrested later that day and charged with first-degree murder, armed robbery, grand theft, and violation of probation. Two days later, after obtaining a search warrant, the police recovered the murder weapon from beneath a heating grate in Patton's grandmother's home. See Patten v. State, 467 So.2d 975, 975-76 (Fla.1985).[1]
Patton was convicted of first-degree murder, armed robbery, and grand theft, and violation of probation for the offense of auto theft. The jury was deadlocked six-to-six on whether Patton should be sentenced to death. Instead of ordering a mistrial, the trial judge instructed the jury to continue deliberating pursuant to Allen v. United States, 164 U.S. 492, 501-02, 17 S.Ct. 154, 41 L.Ed. 528 (1896) (upholding *372 the trial judge's charge to the jury that it was the jury's duty to decide the case if it could conscientiously do so). A short time later, the jury recommended a sentence of death by a seven-to-five vote. The trial court accepted the recommendation of death and sentenced Patton accordingly. On appeal, this Court vacated the death sentence and remanded for a new sentencing, holding that the Allen charge was erroneously given. See Patten v. State, 467 So.2d 975 (Fla.1985).
Patton then petitioned the United States Supreme Court for a writ of certiorari claiming that a resentencing would put him in double jeopardy. That petition was denied. See Patten v. Florida, 474 U.S. 876, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985). Patton then made the same claim to this Court in a petition for writ of prohibition. He argued that the initial jury deadlock amounted to a recommendation of life; therefore, on remand, the issue should be limited to whether there was a proper jury override. That petition was denied. See Patten v. Morphonios, 492 So.2d 1334 (Fla.1986).
Patton next filed a federal petition for writ of habeas corpus, again alleging that a new sentencing proceeding would violate his double jeopardy rights. In accordance with the magistrate's report and recommendation, the petition was denied. See Patton v. Dugger, 678 F.Supp. 1567 (S.D.Fla.1988).
After the second sentencing proceeding, by a vote of eleven to one, the jury again recommended death. See Patten v. State, 598 So.2d 60 (Fla.1992). The trial judge found two aggravating factors: that Patton was previously convicted of a felony involving the use or threat of violence, and that the crime was committed to disrupt or hinder lawful arrest and the probation officer's function since Patton was on probation at the time of this offense. See id. at 61. The trial judge found that no mitigating circumstances existed. See id. Again, Patton was sentenced to death. See id. This Court affirmed that sentence. See id. at 63.
Patton then filed a motion for postconviction relief. The trial court summarily denied the motion in its entirety. On appeal, this Court remanded the case for an evidentiary hearing "on the claims relating to whether counsel was ineffective for failing to raise voluntary intoxication or insanity as a defense to first-degree murder" and whether counsel was ineffective for failing to question the jury about mental illness during voir dire. Patton, 784 So.2d at 395. On all the other claims, this Court affirmed the trial court's summary denial of relief. See id. at 396. The trial court held an evidentiary hearing as directed, and denied relief. This appeal follows.

POSTCONVICTION APPEAL
Patton raises two issues on appeal. First, he argues that he was denied the effective assistance of counsel for three reasons: that his trial counsel failed to utilize evidence of voluntary intoxication at the time of the offense; that the defense of insanity should have been advanced; and that trial counsel failed to conduct adequate voir dire. Second, Patton argues that the trial court erroneously denied his discovery request to interview jurors after the verdict. He wanted to interview them in order to establish that trial counsel's failure to voir dire the jurors about drug abuse and mental illness was prejudicial. We affirm the denial of relief on both claims.

1. Ineffective Assistance of Counsel
Claims of ineffective assistance of counsel are mixed questions of fact and law subject to de novo review. See Porter v. State, 788 So.2d 917, 923 (Fla.2001). *373 The trial court's legal conclusions are subject to independent review by this Court, but the factual findings must be given deference. See id.; see also Stephens v. State, 748 So.2d 1028, 1034 (Fla.1999). In recognizing the trial court's superior vantage point at the evidentiary hearing, this Court will not substitute its judgment for the trial court's judgment on questions of fact, credibility of the witnesses, and weight of the evidence. See Porter, 788 So.2d at 923. The factual findings must demonstrate both that counsel was deficient in performance and that the defendant was prejudiced. See Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Patton first argues that the voluntary intoxication defense was not pursued as vigorously as it should have been and that there was sufficient evidence to support and succeed on this defense. Patton's trial counsel presented voluntary intoxication as a defense in a limited and narrow manner. As the trial court found, Patton had a history of drug abuse. However, counsel wanted to disassociate Patton from that pervasive drug culture in Miami at the time. Patton's trial counsel testified that she wanted to portray Patton as a clean-cut, middle-class young man who had a drug problem. This strategy was consistent with counsel's theory that Patton acted out of panic and fear when he killed the officer and he did not have a specific intent to kill. Certain witnesses testified as to Patton's drug use, and counsel relied on the limited evidence of intoxication elicited from the State's witnesses, all of which was enough to support a jury instruction on voluntary intoxication. Cf. Gardner v. State, 480 So.2d 91, 92-93 (Fla.1985) (finding that evidence elicited during cross-examination of prosecution witnesses provided sufficient evidence for a jury instruction on voluntary intoxication). We accept the trial court's findings of fact as supported by competent, substantial evidence in the record.
Patton disagrees with trial counsel's strategy to downplay the intoxication defense. However, "[c]laims expressing mere disagreement with trial counsel's strategy are insufficient." Stewart v. State, 801 So.2d 59, 65 (Fla.2001). "Counsel cannot be deemed ineffective merely because current counsel disagrees with trial counsel's strategic decisions. Moreover, strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000) (citations omitted).
Trial counsel thoroughly considered her options, weighed the pros and cons of aggressively advancing the intoxication defense, and chose to utilize voluntary intoxication to a limited extent in an effort to disassociate Patton from the culture of drugs and violence that plagued Miami at the time. Her strategy, though criticized by Patton in hindsight, was reasonable at the time and under the circumstances. The trial court determined that counsel's decision to use voluntary intoxication in a limited manner did not fall below reasonable norms of professional conduct. This determination is thoroughly supported by the factual findings.
Patton next argues that trial counsel had ample evidence to present and succeed on an insanity defense, and was ineffective for not doing so. We considered the substance of this argument in our opinion on direct appeal. See Patten v. State, 467 So.2d 975, 978-79 (Fla.1985). In assessing Patton's claim that the State bore the burden of affirmatively showing that Patton was sane at the time of trial, we stated:

*374 After all four court-appointed experts found appellant competent to stand trial and competent at the time of the offense under the state's modified M'Naghten test, counsel did not attempt to affirmatively assert the defense of insanity under that test. In our view, this was not an inadvertent omission by counsel. Facing the obvious improbability of a successful insanity defense under these circumstances, counsel instead sought to have the trial judge reject the modified M'Naghten test....
Id. at 978. We went on further to state:
In this case the defense of insanity was not asserted, nor was the evidence of appellant's prior adjudication or commitment offered at trial. The reason for this is clear in the record. The appellant had no experts to testify as to his insanity.
Id. at 979.
Trial counsel testified at the evidentiary hearing that she initially vigorously pursued an insanity defense. However, as her investigation progressed, she decided against presenting that defense. The trial court found this to be a sound strategic decision.
The record indicates that in 1978 Patton was adjudicated not guilty by reason of insanity on a charge of receiving stolen property and was involuntarily committed. Despite this history, however, counsel testified that she ultimately decided to forego a defense of insanity because of Patton's surreptitious attempt to feign insanity in this case and because there was no favorable expert medical testimony. Patton wrote letters to his sister and girlfriend boasting that he had manipulated the doctors and convinced them that he was mentally ill. Four psychiatrists were appointed to evaluate Patton's competency and sanity at the time of the crime, none of whom determined that Patton was legally insane at the time of the offense. In addition to the four court-appointed doctors, and at defense counsel's request, Dr. Jethro Toomer examined Patton. Dr. Toomer was asked to determine: (1) whether Patton had the ability to conform his conduct to the requirements of the law, and (2) whether Patton was under the influence of some type of emotional disturbance at the time of the alleged incident. Dr. Toomer did not prepare a written report, but testified at Patton's first penalty phase trial that Patton knew it was wrong to kill and knew the consequences of his actions. Based on this information, Patton's defense counsel testified that she did not believe Patton had a good faith defense of insanity, and that she was therefore ethically prohibited from asserting one.
Patton argues that he did have a valid insanity defense and that he could have prevailed at trial. He primarily relies on Dr. Toomer's testimony at the second sentencing hearing where he testified that Patton was insane at the time of the murder. As the trial court found, this testimony is inconsistent with Dr. Toomer's testimony at the first sentencing proceeding. Although Dr. Toomer stated at the second sentencing proceeding that Patton was insane at the time of the crime, Dr. Toomer was unable to diagnose Patton with a mental disease or defect, which M'Naghten requires.
The legal test for insanity in Florida in criminal cases has long been the "M'Naghten Rule."[2]See Cannady v. State, 620 So.2d 165, 168 n. 1 (Fla.1993); Anderson v. State, 276 So.2d 17, 18 (Fla. *375 1973); Piccott v. State, 116 So.2d 626, 627 (Fla.1959); Davis v. State, 44 Fla. 32, 32 So. 822, 826 (1902). Under M'Naghten, an accused is not criminally responsible if, at the time of the alleged crime, the defendant, by reason of a mental disease or defect, (1) does not know of the nature or consequences of his or her act; or (2) is unable to distinguish right from wrong. See Gurganus v. State, 451 So.2d 817, 820 (Fla.1984); Wheeler v. State, 344 So.2d 244, 245 (Fla.1977). Generally, then, a defendant can be found not guilty by reason of insanity if he or she commits an unlawful act, but by reason of a mental infirmity, disease, or defect is unable to understand the nature and quality of his or her act, or its consequences, or is incapable of distinguishing right from wrong at the time of the incident. See Hall v. State, 568 So.2d 882 (Fla.1990).
Not one expert in this case conclusively diagnosed Patton with a mental infirmity, disease, or defect. Dr. Charles Mutter stated that Patton had a "sociopathic personality disorder with drug abuse." Dr. Sanford Jacobson reported that "the mental status examination and interview do not in my opinion support a finding of an illness which would have been present at the time of the offense." Dr. Edward Hererra reported, "I do not find any evidence of mental illness in the defendant at the present time." And Dr. Albert Jaslow stated, "Although [Patton] presented the picture of general incompetence, and claimed from his discussions to have active psychotic manifestations, there were a number of areas that suggested a contrived and exaggerated, rather than a truly active major mental disorder."
Even Dr. Toomer, who testified that Patton suffered from an extreme mental or emotional disturbance, could not give a specific diagnosis of a mental disease or defect. At the 1989 resentencing hearing, Dr. Toomer testified that because Patton did not know the difference between right and wrong at the time he shot the officer, he was insane. However, he called Patton's behavior a result of an "antisocial personality disorder," and explained that "in the nature of antisocial personality disorder ... behavior tends to break down when the individual is faced with unanticipated or with anticipated stressors."
Additionally, at the evidentiary hearing, the State relied on a memo defense counsel prepared before Patton's trial that recapped a conversation she had with Dr. Toomer. That memo states:
Tommer [sic] indicated that he could not find anything in terms of gross mental disturbances based on the test that he had administered. Although [Patton] had some symptoms, and has a socio-pathic personality with manic depressive overtones, he was not able to relate the symptoms to any clear cut disorder.
Because Dr. Toomer called Patton's condition a "disorder," and was unable to diagnose Patton with a specific mental disease or defect, the legal definition of insanity was not met. This is true even in light of Dr. Toomer's expert opinion that Patton was insane at the time of the crime. The difference between a disorder and a disease is not insignificant. See Elledge v. State, 706 So.2d 1340, 1346 (Fla.1997) (affirming death sentence where trial court denied statutory mental health mitigator based on the expert testimony that defendant had antisocial personality disorder and that such disorder is not a mental illness, but a life long history of a person who makes bad choices in life and that these choices are conscious and volitional); Rose v. State, 617 So.2d 291, 294 (Fla.1993) (finding that trial court properly denied relief on claim of ineffective assistance of counsel where counsel conducted a sufficient *376 investigation of mental health mitigation but made a strategic decision not to present such evidence because psychologist determined defendant had an antisocial personality disorder but not an organic brain disorder); see also Long v. State, 610 So.2d 1268, 1272 (Fla.1992) (affirming death sentence, noting that state's mental health expert testified during guilt phase in regard to defendant's insanity defense, that although defendant "did suffer from a severe antisocial personality disorder, it was his opinion that Long did not suffer from a mental illness or disease"); Jennings v. State, 453 So.2d 1109, 1112 (Fla.1984) (affirming death sentence, noting that state's psychiatric expert in penalty phase testified that although appellant "had a character or personality disorder which is not easily cured, appellant did not suffer from any mental disease or defect"), vacated on other grounds, 470 U.S. 1002, 105 S.Ct. 1351, 84 L.Ed.2d 374 (1985).
Counsel's decision to forego the insanity defense was not unreasonable under Strickland since she had no evidence that Patton suffered from a mental disease or defect. Therefore, we accept the trial court's findings of fact and conclude that counsel was not ineffective because deficient performance was not demonstrated.
Patton next argues that counsel was ineffective for failing to question the jury about its perceptions of mental illness. Because we affirm the trial court's order denying relief on the insanity defense claim, we also conclude that counsel's decision to forego questioning the venire about mental illness was appropriate. At the hearing below, counsel testified that it would not have been beneficial to question the venire about mental illness and that she did not think the judge would allow such questioning in the penalty phase. Counsel's decision to forego questioning the jury on mental illness is consistent with the lack of evidence to support an insanity defense. Thus, deficient performance on this issue has not been demonstrated.[3]
For these reasons, we affirm the trial court's denial of relief on Patton's claims that counsel was ineffective.

2. Request to Interview Jurors
In his second claim on appeal, Patton argues that he should have been permitted to voir dire the jurors prior to the evidentiary hearing on this motion for postconviction relief.[4] Patton argues here that he must be permitted to interview the jurors in order to prove he was prejudiced under Strickland by counsel's failure to voir dire the jurors on mental illness prior to trial. However, as we explained above, counsel's failure to question the jury about mental illness did not constitute deficient performance. Thus, we need not reach the merits of Patton's prejudice claim. See Stewart v. State, 801 So.2d 59, 65 (Fla.2001) (finding that because Strickland requires the establishment of both prongs, when a defendant fails to show one, it is not necessary to consider the other). The trial court correctly denied relief on this issue.

WRIT OF HABEAS CORPUS
Patton has also filed a petition for writ of habeas corpus. We have considered the *377 issues raised in Patton's petition, and for the following reasons, deny relief.

1. Ring v. Arizona Claims
Patton first argues that his sentence is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), because (1) the judge overrode the first jury's recommendation of life as that jury was deadlocked by a six-to-six vote until it was erroneously given an Allen[5] instruction; (2) the indictment failed to include all the elements of the offense; (3) the recommendation of death was merely advisory and the final decision erroneously rested with the judge; (4) Patton wrongfully bore the burden of proving mitigation in the penalty phase; and (5) the State was allowed to argue facts to the jury that amounted to doubling of aggravators, but Patton could only object if the trial court doubled aggravators in the sentencing order.
Patton alleges that the first sentencing proceeding resulted in a recommendation of life because of the six-to-six tie. This Court has already addressed the issue, and specifically held that "[t]here was no life recommendation in this case." See Patten, 467 So.2d at 980. We decline to re-address an issue that has already been considered and resolved on the direct appeal of the first sentencing proceeding. See Parker v. Dugger, 550 So.2d 459, 460 (Fla.1989) ("[H]abeas corpus petitions are not to be used for additional appeals on questions which could have been ... raised ... in a rule 3.850 motion...."); Thomas v. Wainwright, 486 So.2d 574, 575 (Fla.1986) ("Habeas corpus is not available for the purpose of reviewing arguments that could have been raised but were not raised by timely objection at trial and argument on appeal."). Thus, because this issue was adjudicated on its merits, it is procedurally barred. The Ring decision does not require this Court to revisit the issue.
Next, Patton argues that the indictment failed to include all elements of the offense. The indictment charged Patton with grand theft (of the green Volkswagen he drove just prior to the shooting), first-degree murder, and armed robbery (of the getaway car he stole at gunpoint just after the shooting). "He was found guilty as charged." Patton v. State, 784 So.2d 380, 385 (Fla.2000). Patton now asserts that his death sentence is unconstitutional under Ring because Florida's capital sentencing scheme fails to require that aggravating circumstances be enumerated and charged in the indictment.
In the second sentencing proceeding, the trial judge found as an aggravating circumstance that Patton was previously convicted of a prior violent felony. This aggravating circumstance was based on a 1975 conviction for armed robbery, as well as the armed robbery of the getaway car Patton took at gunpoint just after the shooting. This armed robbery was charged in the indictment, and the jury unanimously found Patton guilty of it. The existence of this prior violent felony aggravator satisfies the mandates of the United States and Florida Constitutions, and therefore imposition of the death penalty was constitutional. See Doorbal v. State, 837 So.2d 940, 963 (Fla.2003) (stating that prior violent felony aggravator based on contemporaneous crimes charged by indictment and on which defendant was found guilty by unanimous jury "clearly satisfies the mandates of the United States and Florida Constitutions").
Patton next asserts that Florida's capital sentencing scheme is unconstitutional *378 because the jury's recommendation is merely advisory. This issue was addressed in King v. Moore, 831 So.2d 143, 148 (Fla.) (Shaw, J., concurring) cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002), and Bottoson v. Moore, 833 So.2d 693, 725 (Fla.) (Lewis, J., concurring in result only), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002). However, these cases did not overrule the authority upholding the constitutionality of the jury's advisory role. We decline to do so here.
Next, Patton claims that under Florida's capital sentencing statute, the maximum penalty is life until the state proves an aggravator, that the sentencing statute requires the defendant to prove a mitigator, and that if the defendant fails to do so, the state is relieved of its burden. Patton raised this claim in his motion for postconviction relief, and it was summarily denied. See Patton, 784 So.2d at 395. On review of that denial, this Court stated that the "underlying burden-shifting and Caldwell error claims are legally insufficient and conclusively rebutted by the record." Id. Even though Patton now argues that Ring requires this Court to revisit this claim, we will not do so because the prior violent felony aggravator satisfies constitutional mandates. See Jones v. State, 855 So.2d 611, 619 (Fla.2003); Doorbal, 837 So.2d at 963.
Finally, Patton argues that the jury was instructed to consider aggravators without being instructed to avoid their doubling effect. Patton argues that the State asserted three aggravators: prior violent felony, avoiding arrest, and hindrance of governmental function. In the sentencing order, the court merged the avoiding arrest and hindrance of a governmental function aggravators. On direct appeal, Patton challenged the violent felony and avoiding arrest (which had merged with hindrance) aggravators. The issue was denied on its merits. See Patten v. State, 598 So.2d 60, 63 (Fla.1992). However, Patton now asserts that this Court should reconsider his claim in light of Ring. Because this Court has determined that Ring has not overruled Florida's capital sentencing scheme, this claim is denied.

2. Ineffective Assistance of Appellate Counsel
In his second issue, Patton alleges ineffective assistance of appellate counsel. Claims of ineffective assistance of appellate counsel are appropriately raised in a petition for writ of habeas corpus. See Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). In order to grant habeas relief based on ineffectiveness of counsel, this Court must determine: "[F]irst, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result." Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986). "The defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069.
Patton first alleges that appellate counsel was ineffective for failing to object to an erroneous factual finding by this Court that an instruction had not been requested by trial counsel regarding doubling of aggravators. In a footnote in the opinion on Patton's direct appeal, this Court stated that trial counsel had not requested a limiting instruction advising the jury not to double the weight of multiple aggravating circumstances. See Patten, *379 598 So.2d at 63. Now Patton alleges that an instruction was requested and denied. Patton's appellate counsel did not raise this issue in the motion for rehearing. This, Patton argues, constitutes ineffective assistance of appellate counsel.
Patton fails to show how he was prejudiced by this erroneous factual determination. We indicated on direct appeal that the trial court "specifically considered the events as one aggravating circumstance and did not give them a doubling effect in imposing the death sentence." Patten, 598 So.2d at 63. Thus, even if Patton can show that appellate counsel failed to raise the factual issue in a motion for rehearing, he cannot demonstrate how any such error undermined the sentence of death. "If a legal issue would in all probability have been found to be without merit had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective." Gore v. State, 846 So.2d 461, 471 (Fla.2003) (quoting Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000)). Therefore, relief on this claim is denied.
Patton next argues that the trial court's denial of his motion to suppress was erroneous and appellate counsel's failure to raise the issue on direct appeal was prejudicial in both the original appeal and the resentencing appeal. In Jones v. Moore, 794 So.2d 579, 583-84 (Fla.2001), this Court explained the procedure to be followed when a petitioner alleges ineffective assistance of appellate counsel for failing to raise a preserved evidentiary issue:
With regard to evidentiary objections which trial counsel made during the trial and which appellate counsel did not raise on direct appeal, this Court evaluates the prejudice or second prong of the Strickland test first. In doing so, we begin our review of the prejudice prong by examining the specific objection made by trial counsel for harmful error. A successful petition must demonstrate that the erroneous ruling prejudiced the petitioner. If we conclude that the trial court's ruling was not erroneous, then it naturally follows that habeas petitioner was not prejudiced on account of appellate counsel's failure to raise that issue. If we do conclude that the trial court's evidentiary ruling was erroneous, we then consider whether such error is harmful error. If that error was harmless, the petitioner likewise would not have been prejudiced.
The first step is to determine whether the evidentiary issue was preserved for appellate review. See Valle v. Moore, 837 So.2d 905, 910 (Fla.2002) (setting forth the analysis to follow when appellate counsel fails to raise an issue that was "properly preserved by objection at trial"). In this case, both parties agree that trial counsel did not object to the admission of Patton's statements to police at the time the statements were admitted, either at the original trial or at resentencing. To preserve an evidentiary issue for appellate review, an appropriate objection must be made at trial when the evidence is offered. See Terry v. State, 668 So.2d 954, 959 (Fla.1996). The denial of a pretrial motion to suppress "`is not tantamount to a proper and seasonable objection to the questioned evidence at the trial upon the issue.'" Id. (quoting Robertson v. State, 94 Fla. 770, 114 So. 534, 536 (1927)). Because there was no objection to the admission of the evidence at trial, the issue was not preserved for appellate review. In the absence of fundamental error, appellate counsel cannot be deemed ineffective for failing to raise this unpreserved issue. See Schwab v. State, 814 So.2d 402, 414 (Fla.2002).
*380 Patton argues that if the claim is found to be procedurally barred, it should nonetheless be considered because the error is fundamental. Fundamental error is defined as error that reaches "down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So.2d 895, 898 (Fla.1996) (quoting State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)). Patton's fundamental error argument was raised for the first time in his reply to the State's response to his habeas petition. The entirety of Patton's reply is:
Should, however, the Court determine that there is such an impediment, Patton submits that the error was fundamental and appellate counsel should nonetheless have raised it.
"A summary or conclusory allegation is insufficient to allow the trial court to examine the specific allegations against the record." Ragsdale v. State, 720 So.2d 203, 207 (Fla.1998); see also Rumph v. State, 527 So.2d 270 (Fla. 1st DCA 1988) (finding appellant's 3.850 motion facially insufficient to raise any fundamental error and that the procedural error complained of occurred during trial and should have been raised on appeal from the judgment of conviction). Likewise, such a conclusory allegation is not sufficient for appellate purposes. Thus, to the extent that fundamental error is alleged by Patton, the claim is conclusory and facially insufficient.

3. Proportionality Review
Patton next asserts that this Court failed to conduct a proportionality review of his death sentence. Patton's allegation that appellate counsel was ineffective for failing to raise proportionality is without merit for two reasons. First, a proportionality review is inherent in this Court's direct appellate review and the issue is considered regardless of whether it is discussed in the opinion or raised by a party, and second, the death sentence in this case was proportional.
"The mere fact that proportionality is not mentioned in the written opinion does not mean that no proportionality review was conducted." Ferguson v. Singletary, 632 So.2d 53, 58 (Fla.1994) (citing Booker v. State, 441 So.2d 148, 153 (Fla.1983)). In Booker, this Court explained that failure to mention proportionality in its opinion does not mean that the Court did not consider it. See 441 So.2d at 153. This Court stated that a proportionality review "is an inherent aspect of our review of all capital cases. We need not specifically state that we are doing that which we have already determined to be an integral part of our review process." Id. Thus, the fact that the direct appeal of Patton's resentencing does not include a discussion of proportionality is not a fact that warrants reversal.
In Patton's direct appeal, this Court considered the following claims: (1) whether the death penalty procedure was unconstitutional because the sentencing jury did not have to report its findings of aggravation and mitigation in detail; (2) and (3) whether the prosecutor's arguments in voir dire constituted presentation of nonstatutory aggravating factors; (4) whether the jury was erroneously instructed as to the applicability of certain aggravating factors; (5) whether the trial court erred in its finding that no mental mitigators existed; (6) whether an error committed in the first sentencing phase trial should be reconsidered; and (7) whether the death penalty itself is constitutional. Of these seven claims, five involved consideration of aggravating and mitigating factors. Thus, inherent in this Court's review of these claims was a thorough consideration of the findings of mitigation and aggravation, and the Court expressly affirmed the trial judge's imposition of death.
*381 The resentencing court found two aggravating factors: (1) a prior violent felony conviction based on a 1975 armed robbery and the contemporaneous conviction for the armed robbery of Maxime Rhodes; and (2) hindering a governmental function and avoiding arrest, which were merged. The trial court gave great weight to each of these aggravators. The trial court found no statutory mitigating circumstances, and rejected Dr. Toomer's testimony about the mental mitigators on credibility grounds. The trial court found as nonstatutory mitigation that Patton was abused as a child and used drugs. See Patten v. State, 598 So.2d 60, 63 (Fla.1992).
A proportionality review requires this Court to "consider the totality of circumstances in a case, and to compare it with other capital cases." Porter v. State, 564 So.2d 1060, 1064 (Fla.1990). The death penalty is reserved only for those cases where the most aggravating and least mitigating circumstances exist. See Kramer v. State, 619 So.2d 274, 278 (Fla.1993). Although this Court did not discuss its proportionality analysis in the direct appeal of Patton's resentencing, a proportionality finding is supported. See Burns v. State, 699 So.2d 646 (Fla.1997) (affirming death sentence for the murder of a law enforcement officer where avoiding arrest and hindering law enforcement aggravating circumstances were found and merged, there was one statutory mitigating circumstance of no significant criminal history, and insignificant nonstatutory mitigation); Reaves v. State, 639 So.2d 1 (Fla.1994) (affirming death sentence for the murder of a deputy sheriff, where the record supported the existence of two aggravating circumstances of prior violent felony and avoiding arrest, no statutory mitigators, and three nonstatutory mitigators).
We therefore deny habeas relief on this issue.

CONCLUSION
Based on the reasons stated as to each specific issue, we hereby affirm the trial court's denial of postconviction relief. We also deny habeas corpus relief.
It is so ordered.
WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, C.J., concurs specially with an opinion.
CANTERO, J., concurs specially with an opinion, in which WELLS and BELL, JJ., concur.
ANSTEAD, C.J., specially concurring.
I concur in the majority opinion in all respects except for its discussion of the decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
CANTERO, J., specially concurring.
I concur in the majority opinion. Moreover, regarding the petitioner's claim that Florida's capital sentencing scheme violates Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), I also would hold, for the reasons stated in my specially concurring opinion in Windom v. State, Nos. SC01-2706 & SC02-2142, ___ So.2d ___, 2004 WL 1057640 (Fla. May 6, 2004), that Ring does not apply retroactively.
WELLS and BELL, JJ., concur.
NOTES
[1] Patton's name was misspelled in the first direct appeal and resentencing appeal. See Patton v. State, 784 So.2d 380, 385 n. 1 (Fla.2000).
[2] The rule is so named because it is derived from an early English decision, M'Naghten's Case, 8 Eng. Rep. 718 (1843).
[3] Patton also refers to alleged ineffectiveness for failing to question the venire about intoxication. This Court has affirmed the summary denial of that claim. See Patton v. State, 784 So.2d 380, 390 (Fla.2000).
[4] Patton filed a motion to interview jurors, and the trial court denied it. An interlocutory appeal was filed, and we dismissed the appeal. Patton v. State, 817 So.2d 849 (Fla.2002) (dismissing Patton's petition for interlocutory review).
[5] Allen v. United States, 164 U.S. 492, 501-02, 17 S.Ct. 154, 41 L.Ed. 528 (1896).