LAMBERT, J.
Jason Rodriguez appeals his convictions for one count of first-degree murder and five counts of attempted first-degree murder following a jury trial. The sole issue raised on appeal is whether the trial court erred in granting the State’s request to instruct the jury on the insanity-hallucinations defense set forth in Florida Standard Jury Instruction (Criminal) 3.6(b). We reverse because this instruction was not applicable in Rodriguez’s case, Rodriguez properly objected to its use, and its use was not harmless beyond a reasonable doubt.
On November 6, 2009, Rodriguez, a former employee of the Orlando offices of Reynolds, Smith and Hills (“RSH”), entered RSH and shot several employees, killing one and wounding five others. He was indicted for first-degree murder and five counts of attempted first-degree murder with a firearm.
At trial, Rodriguez pleaded insanity as his sole defense. Rodriguez called seven expert witnesses who collectively testified that Rodriguez was diagnosed as a paranoid schizophrenic, and was experiencing delusions and audio hallucinations “regarding an imaginary entity, Sharp Tooth or blue tooth, that issued threats of others were to humililate [sic], degrade and eventually kill Rodriguez.” In its opening statement, the State conceded that Rodriguez suffered from a mental disease or defect and was diagnosed post-shooting as a paranoid schizophrenic. All seven of Rodriguez’s experts testified that Rodriguez was insane under the “M’Naghten Rule”[1] because he did not know the difference between right and wrong at the time of the offenses. The State did not call an expert witness at trial, but argued that Rodriguez had been angry at RSH for terminating his employment and that he knew what he was doing was wrong when he shot the RSH employees.
At the charge conference, Rodriguez requested, without objection, that the court instruct the jury with the standard insanity instruction, which provides in relevant part:
An issue in this case is whether (defendant) was insane when the crime allegedly was committed.
A person is considered to be insane when:
1. [He] [She] had a mental infirmity, disease, or defect.
2. Because of this condition
a. [he] [she] did not know what [he] [she] was doing or its consequences or
b. although [he] [she] knew what [he] [she] was doing and its consequences, [he][she] did not know it was wrong.
[[Image here]]
All persons are presumed to be sane. The defendant has the burden.of proving the defense of insanity by clear and convincing evidence. Clear and convincing evidence is evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief, without hesitation, about the matter in issue.
*543 Fla. Std. Jury Instar. (Crim.) 3.6(a) (2009) (bold font omitted). This instruction is consistent with the M’Naghten Rule, which has long been the legal test in Florida for determining insanity in criminal cases. See Patton v. State, 878 So.2d 368, 374 (Fla.2004). “Under M’Naghten, an accused is not criminally responsible if, at the time of the alleged crime, the defendant, by reason of a mental disease or defect, (1) does not know of the nature or consequences of his or her act; or (2) is unable to distinguish right from wrong.” Id. at 375.
Effective June 19, 2000, the M’Naghten Rule was codified in section 775.027, Florida Statutes, which provides:
(1) AFFIRMATIVE DEFENSE. — All persons are presumed to be sane. It is an affirmative defense to a criminal prosecution that, at the time of the commission of the acts constituting the offense, the defendant was insane. Insanity is established when:
(a) The defendant had a mental infirmity, disease, or defect; and
(b) Because of this condition, the defendant:
1. Did not know what he or she was doing or its consequences; or
2. Although the defendant knew what he or she was doing and its consequences, the defendant did not know that what he or she was doing was wrong.
Mental infirmity, disease, or defect does not constitute a defense of insanity except as provided in this subsection.
(2) BURDEN OF PROOF — The defendant has the burden of proving the defense of insanity by clear and convincing evidence.
§ 775.027, Fla. Stat. (2009). Pursuant to section 775.027, any issue of insanity is to be determined solely under the M’Naghten Rule. See id. (“Mental infirmity, disease, or defect does not constitute a defense of insanity except as provided in this subsection.”). Section 775.027 also transferred the burden of proving insanity to the defendant.[2] See id.
In addition to the standard insanity instruction, the State requested that the trial court separately instruct the jury as to the insanity — hallucinations defense set forth in Florida Standard Jury Instruction (Criminal) 3.6(b). Further, the State requested that this instruction be modified to place the burden of proving insanity by clear and convincing evidence upon Rodriguez. Preliminarily, the standard hallucinations instruction provides a cautionary notice that it is to be given only for offenses occurring before June 19, 2000, the date that section 775.027 became effective.[3] Fla. Std. Jury Instr. (Crim.) 3.6(b) (citing § 775.027, Fla. Stat.). The instruction thereafter reads in pertinent part:
An issue in this case is whether (defendant) was insane when the crime allegedly was committed.
*544 A person is considered to be insane when:
1. The person had a mental infirmity, disease, or defect.
2. Because of this condition, the person had hallucinations or delusions which caused the person to honestly believe to be facts things that are not true or real. The guilt or innocence of a person suffering from such hallucinations or delusions is to be determined just as though the hallucinations or delusions were actual facts. If the act of the person would have been lawful had the hallucinations or delusions been the actual facts, the person is not guilty of the crime.
All persons are presumed to be sane. However, if the evidence causes you to have a reasonable doubt concerning the defendant’s sanity, then the presumption of sanity vanishes and the State must prove beyond a reasonable doubt that the defendant was sane.
Id. (bold font omitted). Because this instruction requires the jury to find that the “act of the person would have been lawful had the hallucinations or delusions been the actual facts” for the defendant to be not guilty by reason of insanity, its use often, although not always, is accompanied by an instruction on the law of self-defense. See, e.g., Congleton v. Sansom, 664 So.2d 276, 280 (Fla. 1st DCA 1995) (“In the law, there are many situations in which a person may intentionally injure or kill another and not be subject to criminal punishment. For example, an individual may kill in self-defense.”); Boswell v. State, 610 So.2d 670, 671 (Fla. 4th DCA 1992) (“Boswell takes the position that he hallucinated the initial shot and that he believed that he was firing in self defense.”).
Rodriguez objected to the State’s requested instruction, arguing that the hallucinations instruction was inapplicable because his alleged crimes occurred in 2009, that the instruction would be confusing to the jury, and that by using the instruction, he would essentially be forced into raising an affirmative defense of self-defense, which he never intended to do. The trial court overruled Rodriguez’s objection and instructed the jury on both the standard insanity instruction and the modified hallucinations instruction.[4] However, the jury was instructed not to consider the hallucinations instruction unless it found Rodriguez sane under the standard insanity instruction. In other words, if the jury found Rodriguez insane under the M’Naghten instruction, it was not to consider the hallucinations instruction.
A trial .court’s decision to give or withhold a proposed jury instruction is reviewed under the abuse of discretion standard of review. Truett v. State, 105 So.3d 656, 658 (Fla. 1st DCA 2013) (quoting Langston v. State, 789 So.2d 1024, 1026 (Fla. 1st DCA 2001)). In support of its decision to ignore the prefatory, qualifying language in the hallucinations instruction, which stated that the instruction should only be given for offenses that allegedly occurred before June 19, 2000, the trial court relied on three cases: (1) Cruse v. State, 588 So.2d 983 (Fla.1991); (2) Turner v. State, 809 So.2d 59 (Fla. 5th DCA 2002); and (3) Wallace v. State, 766 So.2d 364 (Fla. 3d DCA 2000). In each of those cases, the trial court gave a hallucinations instruction similar to the one in the instant case. Cruse, 588 So.2d at 989; Turner, 809 So.2d at 61; Wallace, 766 So.2d at 368. *545 However, the offenses in each of those cases occurred prior to June 19, 2000. Cruse, 588 So.2d at 986 (1987 offense); Turner, 809 So.2d at 59 (1998 offense); Wallace, 766 So.2d at 366 (1997 offense).
The trial court also relied on Martin v. State, 110 So.3d 936 (Fla. 1st DCA 2013), in which the court instructed the jury on the standard insanity defense but refused, over Martin’s objection, to also instruct the jury on the law of self-defense. Id. at 938. At trial, Martin presented testimony that his state of delirium could have caused him to act to protect himself because he believed his life was in danger. Id. The First District Court of Appeal reversed, finding that the trial court erred in excluding testimony related to self-defense and in denying Martin’s request for a self-defense jury instruction because he presented “ample evidence” to support his request. Id. at 939-40. However, in Martin, there is no indication that a hallucinations instruction was given to the jury. Moreover, in the instant case, Rodriguez specifically objected to the State’s request that the court give the jury a self-defense instruction, reiterating that he was not claiming self-defense, even if his hallucinations and delusions were taken as true.
Here, because the offenses were allegedly committed in 2009, we find that the trial court abused its discretion by using the hallucinations instruction in Rodriguez’s trial. That instruction is not applicable for offenses that occurred after June 19, 2000. See § 775.027(1), Fla. Stat. (2009). While the jurors were free to consider Rodriguez’s hallucinations and delusions as evidence of whether he suffered from a mental infirmity, disease, or defect, they were only permitted to consider whether this condition caused Rodriguez at the time of the offenses to not know what he was doing or the consequences of his actions, or whether he knew that what he was doing was wrong. See id. Additionally', the trial court modified the standard hallucinations instruction by requiring Rodriguez to establish his insanity by clear and convincing evidence. Because the hallucinations instruction only applies to offenses committed prior to the enactment of section 775.027, which transferred the burden of proving insanity to the defendant, the instruction expressly provides that “if the evidence causes you to have a reasonable doubt concerning the defendant’s sanity, then the presumption of sanity vanishes and the State must prove beyond a reasonable doubt that the defendant was sane.” Fla. Std. Jury Instr. (Crim.) 3.6(b). Here, by modifying the standard hallucination instruction to place the burden of proving insanity upon the defendant, the court placed an additional, unwanted burden on Rodriguez.
Having concluded that giving the hallucinations instruction was error, we next address whether the error was harmless. “An error is harmful ‘[i]f the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict.’ ” Martin, 110 So.3d at 940 (alteration in original) (quoting State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986)). In this context, “[rjeversible error occurs when an instruction is not only an erroneous or incomplete statement of the law, but is also confusing or misleading. The test is not whether a particular jury was actually misled, but instead the inquiry is whether the jury might reasonably have been misled.” McKenzie v. State, 830 So.2d 234, 236-37 (Fla. 4th DCA 2002) (citation omitted). In determining whether the erroneous hallucinations instruction was harmful, we are required to consider the instruction in light of the State’s argument, the other jury instructions, and the evidence in the case. See James v. State, 16 So.3d 322, 325 (Fla. 4th DCA 2009) *546 (“The potentially erroneous jury instruction must be examined in the context of the other jury instructions, the attorneys’ arguments, and the evidence in the case.” (citing Abbott v. State, 958 So.2d 1140, 1142 (Fla. 4th DCA 2007))); Holmes v. State, 842 So.2d 187, 187 (Fla. 2d DCA 2003) (stating that true impact of court’s erroneous jury instruction should be considered in light of prosecutor’s closing argument); Harvey v. State, 448 So.2d 578, 581 (Fla. 5th DCA 1984).
In its brief, the State argues that any error in giving the hallucinations instruction was harmless because it essentially provided Rodriguez with the proverbial “second bite at the insanity apple” since the jury was instructed that only if it first found Rodriguez sane under the M’Naghten standard in Standard Jury Instruction 3.6(a), could it then consider the hallucina-r tions instruction as a second option to find Rodriguez insane. While Rodriguez theoretically could have benefited from the hallucinations instruction, he specifically objected to its use and correctly argued that the instruction was erroneous and inapplicable based upon section 775.027. In addition, during closing arguments, Rodriguez’s counsel did not attempt to persuade the jury to find Rodriguez insane under the hallucinations instruction. In fact, Rodriguez’s counsel expressly argued to the jury that it did not need to consider the hallucinations instruction because, according to Rodriguez’s counsel, it should find him- insane based solely on the M’Naghten Rule. This was a correct statement of the law.
In response to Rodriguez’s closing argument, the State argued that if the jury did not consider the hallucinations instruction, it would “leave[ ] out a critical element or evaluation that needs to take place in this case.” This was an incorrect statement of the law. If Rodriguez met his evidentiary burden of proof that he did not know what he was doing was wrong, then the jury was required to find him not guilty by reason of insanity and no further “critical element or evaluation” was required.
The State then advised the jury that it was going to draw the jury’s attention to some of the language in this “second instruction” that “they will have to consider during [its] deliberations.” (emphasis added). This too was erroneous, as well as misleading, because there is no conceivable reason that the State should argue that the jury must consider the second instruction. Again, even if the hallucinations instruction was applicable and if the jury found Rodriguez insane under the M’Naghten instruction, the hallucinations instruction could not be used by the State to suggest or argue that Rodriguez should nevertheless be found sane. See Cruse, 588 So.2d at 989.
The State continued as follows:
So we heard doctor after doctor, basically, stop on the other instruction giving us their opinion that because of the delusions he didn’t know the difference. Between right and wrong; he-didn’t know what he was doing was wrong; but they did not address this.
So just as they were sloppy on the front end, they’re now sloppy on the back. Till we got to Dr. Danzinger, the [defense’s] last witness. So now we’re in a point in the trial where the witnesses can’t really go back out and fill in the gaps or clarify matters while testimony is going on. We’re at the last witness, who admits, I did not utilize [the hallucinations standard] in coming to my conclusion. And if I did, it did not justify the violence.
Ladies and gentlemen, we are asking you to complete this path, to look at the evidence that has been presented here in light of this. Was — assuming Mr. *547 Rodriguez’s delusions were true, any of them, all of them, even though he didn’t tell the doctors, except for Dr. Olander, that there was any imminent danger at RS & H that day, did his delusions justify killing anyone? Did his delusions justify shooting anyone?
And, ladies and gentlemen, once you do the work that their witnesses didn’t do, you will find that they haven’t met their burden, that they have not established any of this. Because here is where you start. All persons are presumed to be sane. So then do you have clear, convincing evidence that is precise, explicit, lacking in confusion, that it produces a firm belief without hesitation about the matter in issue? The answer to that is no.
Dr. Danziger said, no imminent. .Sure, his delusion was that there was the possibility of some sort of danger out there.... Future danger, possible danger, not imminent danger, and that’s why they don’t want you to even look at this.
[[Image here]]
When you consider the facts that he went in there with a clear purpose in mind, that he executed his plan with cool, calm deliberation, walking in, walking out, taking care of business, eliminating a future threat. In his mind, his action is not justified and he is not insane under the law, and I ask that as a result you find him guilty as charged of first degree murder and five counts of attempted first.
We find that this argument improperly suggested to the jury that Rodriguez’s expert witnesses, by limiting themselves to an analysis under M’Naghten (as they were required to do) had “sloppily” evaluated the issue of insanity by not considering whether Rodriguez met his (unwanted) burden of proving that he was insane under the hallucinations instruction. ' In fact, the State specifically argued that Rodriguez’s last expert witness agreed that he did not analyze the issue of insanity under the hallucinations instruction, but if asked to do so, “it did not justify the violence.” Essentially, the State was arguing that, although Rodriguez’s expert witnesses opined that Rodriguez was insane under the M’Naghten Rule, Rodriguez nonetheless failed to establish his insanity under the hallucinations instruction (since his actions “did not justify the violence”) and that Rodriguez’s counsel was intentionally diverting the jury’s attention from a critical piece of evidence that demonstrated Rodriguez’s sanity at the time of the offenses. Rodriguez was not required to present proof of or establish any elements of his insanity defense other than those set forth in the M’Naghten instruction. He was never required to alternatively establish or even address any of the separate elements of the hallucinations instruction.
Rodriguez’s insanity was the primary, if not only, issue at trial. The defense presented seven experts who all testified that Rodriguez was insane under the M’Naghten Rule at the time of his offense. The State did not present a single expert to rebut that testimony. When the erroneous hallucinations instruction is viewed in the context of the entire trial, we cannot say beyond a reasonable doubt that the jury was not misled into analyzing whether Rodriguez was sane under this instruction. Indeed, it is quite possible that the jury “might reasonably have been misled” by the inapplicable jury instruction coupled with the State’s erroneous argument, which essentially invited the jury to find Rodriguez sane based solely on the hallucinations instruction. See McKenzie, 830 So.2d at 236-37. Therefore, we find that the error was not harmless. Accordingly, we are constrained to reverse the convic *548 tions and sentences and remand for a new trial without the use of Florida Standard Jury Instruction (Criminal) 3.6(b). See id.
REVERSED and REMANDED.
LAWSON, C.J., and SAWAYA, JJ., concur.

. M’Naghten’s Case, (1843) 8 Eng. Rep. 718; 10 Clark & F. 200.

. Previously, if the defendant raised the defense of insanity, it created a rebuttable presumption of insanity, and the State had the burden to prove beyond a reasonable doubt that the defendant was sane. See Yohn v. State, 476 So.2d 123, 126 (Fla.1985). Now, pursuant to section 775.027, insanity is an affirmative defense that the defendant must prove by clear and convincing evidence. § 775.027, Fla. Stat. (2009).

. This language was added in 2006. See In re Standard Jury Instructions, In Criminal Cases (No.2005-5), 939 So.2d 1052 (Fla.2006). Notably, the instruction was not amended to shift the burden of proof from the State to the defendant consistent with section 775.027. See supra note 2.

. The hallucinations instruction provided to the jury in Rodriguez's trial informed the jury that "[t]he defendant has the burden of proving insanity by clear and convincing evidence.”