No. 84–6089.   JONES v. ALABAMA.   Sup. Ct. Ala.   Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

I continue to adhere to my view that the death penalty is in all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments. See *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting). I also continue to believe that the death penalty's cruel and unusual nature is made all the more arbitrary and freakish when it is imposed by a judge in the face of a jury determination that death is an inappropriate punishment. See *Spaziano* v. *Florida*, 468 U. S. 447, 467 (1984) (STEVENS, J., dissenting); cf. *Heiney* v. *Florida*, 469 U. S. 920 (1984) (MARSHALL, J., dissenting from denial of certiorari).

In *Spaziano* v. *Florida*, this Court upheld the constitutionality of a state sentencing scheme under which, if the judge could make certain specified findings, he was given authority to override a jury decision for life imprisonment. This case, however, presents the problem of a State's decision to give its judges unguided discretion to overturn such jury decisions. I see this as an important issue of capital sentencing law, and so would grant the petition.

In *Spaziano*, as in this case, after a full hearing, a jury determined that death was not the appropriate punishment. Nevertheless, as in this case, the trial judge overrode that determination and sentenced the defendant to die. In rejecting Spaziano's argument that his death sentence had been meted out in an unconstitutionally arbitrary manner, this Court noted that, under Florida law, the trial judge could not exercise free-wheeling discretion. To the contrary, Florida had forbidden its trial judges to reject such jury decisions unless the evidence favoring death was "so clear and convincing that virtually no reasonable person could differ." *Tedder* v. *State*, 322 So. 2d 908, 910 (Fla. 1975). This Court rejected Spaziano's allegation of arbitrariness and emphasized "the significant safeguard the *Tedder* standard affords a capital defendant." *Spaziano*, 468 U. S., at 465. "We are satisfied," the Court declared, "that the Florida Supreme Court takes that standard seriously." *Ibid.*

In the opinion below, 456 So. 2d 380 (1984), however, the Alabama Supreme Court has made clear that under that State's system a trial judge need make no finding with respect to a jury

verdict of life comparable to that which *Tedder* requires of Florida judges. The Alabama trial judge must simply "consider" the jury's "advisory" sentence. Ala. Code § 13A–5–47(e) (1982). This duty to "consider" may apparently add up to little more than the authority to reject a jury sentence when a judge disagrees with it. Such simple disagreement is illustrated by this case, where the trial judge independently reviewed the evidence, made findings, weighed aggravating and mitigating circumstances (all of which had previously been done by the jury), and then determined that the jury had simply been wrong—for in the judge's view death was appropriate "beyond a reasonable doubt and to a moral certainty." 456 So. 2d 366, 379 (Ala. Crim. App. 1983). But the jury was not criticized for irresponsibility or irrationality; to the contrary, the trial judge explicitly stated that it was "not chastising or inferring that the jury was lax in their responsibility." *Ibid.* The judge simply stated that "society must be protected and that an example must be set forth and made apparent so that our citizens may be secure in their homes and businesses." *Ibid.* Most glaring is the fact that the judge made absolutely no effort to ascertain on what basis the jury reached the contrary conclusion. Rather, the judge wrote that "the Court must follow the dictates of its own conscience." *Ibid.*

This system is quite different from a system where there is no jury, for here there has been a life sentence determination by a properly selected and instructed jury which has been witness to all the evidence and arguments. Where such a determination has been made, it must at least account for something. Under Florida's *Tedder* rule, a judge must at least engage in the awesome task of determining whether he can say, in spite of a jury's rejection of death, that death was so clearly appropriate that the jury determination was virtually beyond reason. Under Alabama's approach, however, the judge is called on to decide little more than whether he agrees with the jury determination. Alabama asks the trial judge to make an inquiry no different than the one it asks of each juror, and like any "juror," he may express his views of the case. But, under the statute, he plays the role of a "juror" with the exclusive power of decision, so the views of the real jurors become legally irrelevant once he reaches his conclusion. Although he must "consider" the jury's determination, he can reject it without explanation, on no more basis than "considered"

disagreement. It approaches the most literal sense of the word "arbitrary" to put one to death in the face of a contrary jury determination where it is accepted that the jury had indeed responsibly carried out its task.

The Eighth Amendment at least mandates that an execution only be the consequence of a "process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." *Eddings* v. *Oklahoma*, 455 U. S. 104, 118 (1982) (O'CONNOR, J., concurring). Here, the judge based the death sentence on his understanding of the evidence and his evaluation of aggravating and mitigating circumstances. But the jury had previously examined the same facts, made findings, evaluated all aggravating and mitigating factors, and reached a determination that death would be inappropriate. Where such a jury finding has been made, the Eighth Amendment requires more than that the trial judge declare that he has considered but disagrees with the conclusion of that admittedly responsible and informed jury.