876

No. 84–6873.  PATTEN *v.* FLORIDA.  Sup. Ct. Fla.  Certiorari denied.

JUSTICE BRENNAN, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia,* 428 U. S. 153, 227 (1976), I would grant certiorari and vacate the judgment below so that the court below can determine the sentence—other than death—that may be appropriate.

JUSTICE MARSHALL, dissenting.

I continue to adhere to my view that the death penalty is in all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments.  See *Gregg* v. *Georgia,* 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting).  I also continue to believe that the death penalty's cruel and unusual nature is made all the more arbitrary when it is imposed by a judge in the face of a jury determination that death is an inappropriate punishment.  See *Jones* v. *Alabama,* 470 U. S. 1062, 1063 (1985) (MARSHALL, J., dissenting from denial of certiorari); *Spaziano* v. *Florida,* 468 U. S. 447, 481–490 (1984) (STEVENS, J., dissenting).  However, even were I to believe that the death penalty could constitutionally be imposed under certain circumstances and that a jury decision for life could be accorded mere advisory status, I would grant certiorari in this case to decide whether the Double Jeopardy Clause bars the State from forcing a defendant to face a second sentencing jury even though the presumptive validity of his first jury's life recommendation has never been overcome.

I

Petitioner Robert Patten was convicted of first-degree murder, and the State sought the death penalty.  During subsequent sentencing deliberations, the jury advised the trial judge that they were deadlocked, 6 to 6; the note concluded: "What now?"  Over petitioner's objections, the judge responded by giving an *Allen* charge encouraging further deliberations.[1]  After continued deliberations, the jury returned with a 7-to-5 recommendation for death.  The court imposed the death sentence.  On appeal, the Florida Supreme Court affirmed petitioner's conviction.  467

---

[1] *Allen* v. *United States,* 164 U. S. 492, 501–502 (1896).

So. 2d 975 (1985). It emphasized, however, that under Florida law, "if seven jurors do not vote to recommend death, then the recommendation is life imprisonment." *Rose* v. *State*, 425 So. 2d 521, 525 (Fla. 1982), cert. denied, 461 U. S. 909 (1983). The court consequently found the giving of the *Allen* charge improper and vacated the death sentence. At this point, though, rather than instructing the trial judge to determine whether it would be appropriate to enter a death sentence regardless of the jury's action, the court chose to remand the case to the trial court for a new sentencing proceeding before a jury. In his motion for rehearing, petitioner urged that the Double Jeopardy Clause barred a second sentencing proceeding. That motion was denied.

## II

In *Bullington* v. *Missouri*, 451 U. S. 430 (1981), this Court held that because Missouri's capital sentencing proceeding was comparable to a trial, in which a life sentence constituted a determination that the prosecution had failed to prove its case, the Double Jeopardy Clause barred the State from subjecting a defendant who had received a life sentence in his first trial to the ordeal of a second sentencing proceeding after his conviction had been reversed. In *Arizona* v. *Rumsey*, 467 U. S. 203 (1984), where a life sentence had been imposed by a judge rather than a jury, the Court found that the Double Jeopardy Clause barred resentencing even though the judge's decision to grant life had been based upon what was later held to be a misinterpretation of state law. "[A]n acquittal on the merits by the sole decisionmaker in the proceeding is final and bars retrial on the same charge." *Id.*, at 211.

In Florida, the jury is not the sole decisionmaker in the sentencing proceedings; the trial judge has the power to override a jury's recommendation for life. See *Spaziano* v. *Florida, supra.* Yet the defendant who has persuaded a jury to reject the State's claim that he deserves to die has nonetheless won a significant victory, for Florida has severely limited the trial judge's power to override a life recommendation. In *Tedder* v. *State*, 322 So. 2d 908 (1975), the Florida Supreme Court held an override to be appropriate only where the "facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ." *Id.*, at 910; accord, *Odom* v. *State*, 403 So. 2d 936, 942 (Fla. 1981), cert. denied, 456 U. S. 925 (1982). Thus, while the life recommendation of a Florida jury does not have the conclusive

effect of the Missouri jury's decision for life that was considered in *Bullington,* the recommendation is presumed final, subject to reversal only where "virtually no reasonable person could differ."

Because a Florida jury's life recommendation is not completely final, this Court has held that the Double Jeopardy Clause does not bar the judge's override of a jury's life recommendation. *Spaziano* v. *Florida, supra.* However, where a defendant is deprived of the benefits of a jury's life recommendation without any subsequent finding by the trial judge that that recommendation was "clear[ly] and convincing[ly]" unreasonable, I believe there to be a double jeopardy bar to the State's demand that the defendant convince yet another jury that he does not deserve to die. If not held unreasonable, a jury's life recommendation should end a Florida defendant's jeopardy as surely as a life verdict ended that of the Missouri defendant in *Bullington.*

Petitioner was deprived of a jury's life recommendation without any court having found that advisory verdict unreasonable. Under Florida law, a 6-to-6 vote is a life recommendation. See *Rose* v. *State, supra,* at 525. When the trial judge received the jury's note indicating that it was deadlocked 6 to 6, there was therefore nothing left for him to do but recall the jury and apply the *Tedder* standard to its life recommendation. I can scarcely believe that the trial judge would have overridden such a recommendation in this case; had he done so, he doubtless would have been reversed on appeal.[2] But instead, the trial judge altered the verdict by giving an *Allen* charge. Then, even while holding the judge to have erred in giving the charge, the Florida Supreme Court proceeded to disregard the fact that the jury's deadlock was a finding for defendant on the issue of death. The Supreme Court's decision to remand was not based upon any finding that a life sentence was unreasonable. The Supreme Court remanded only because the jury's report of a 6-to-6 deadlock had not been contained in a formal recommendation. Since I do not believe that this adherence to formalism is consistent with the double jeopardy concerns implicated by the Supreme Court's demand that petitioner convince yet another jury that he does not deserve to die, I must dissent from this Court's refusal to hear this case.

---

[2] Indeed, by "direct[ing] the trial court's attention" to *Eddings* v. *Oklahoma,* 455 U. S. 104 (1982), "and its possible application to the facts of this case," the Florida Supreme Court suggested its concern that the trial judge had failed to consider evidence militating in favor of a life sentence. 467 So. 2d 975, 980 (1985).