598 So.2d 60 (1992)
Robert PATTEN, Appellant,
v.
STATE of Florida, Appellee.
No. 74318.
Supreme Court of Florida.
March 12, 1992.
Rehearing Denied June 10, 1992.
*61 Lee Weissenborn of the Law Offices of Lee Weissenborn, Miami, for appellant.
Robert A. Butterworth, Atty. Gen. and Ralph Barreira, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Robert Patten appeals his sentence of death imposed in a second sentencing proceeding. This Court previously affirmed his conviction but vacated his original death sentence and remanded the case for resentencing. Patten v. State, 467 So.2d 975 (Fla.), cert. denied, 474 U.S. 876, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985). We have jurisdiction[1] and affirm this death sentence. The facts, as expressed in pertinent part in our prior opinion, noted that
the victim, a Miami police officer, attempted to stop appellant for traveling the wrong way on a one-way street. Appellant abandoned his car, which was later determined to have been stolen, and fled the scene on foot. He ran down an alley with the officer in pursuit. Witnesses heard gunshots and one witness testified that appellant had hidden in the alley and waited for the officer to approach before shooting him. The officer was found dead with two bullet wounds. One bullet had penetrated his heart, killing him instantly, and another had entered the officer's foot in a manner indicating that the officer had been shot after he was dead and lying prostrate.
Immediately after the shooting, appellant stole a car at gunpoint and fled the area.
Patten, 467 So.2d at 975-76. As reflected by the record in the first trial, appellant has had a history of mental problems. In 1976, Patten was adjudicated not guilty by reason of insanity of receiving stolen property, having been involuntarily committed to the Department of Health and Rehabilitative Services for treatment under the provisions of section 394.467, Florida Statutes (1977). Patten was examined as a result of this incident and determined competent to stand trial in the first proceeding of this cause.
In this resentencing proceeding, the State presented twenty witnesses who testified concerning the details of the crime, Patten's background and record, and Patten's behavior and demeanor on the day of the murder. The State also presented expert testimony concerning Patten's mental and psychological state. Patten presented testimony from his sister, stepsister, two police officers, and two psychologists. The family members discussed Patten's deprived and abused background. The police officers testified concerning the evidence of Patten's drug use. Finally, the psychologist testified concerning Patten's mental and psychological state. By an eleven-to-one vote, the jury in the resentencing recommended the death penalty.
In the resentencing hearing, Patten read a letter to the court expressing remorse and stating that he had been scared and under the influence of drugs when he killed the police officer. The trial judge, in imposing the death penalty, found that the following aggravating circumstances existed and that no mitigating circumstances were present:
1. The defendant was previously convicted of a felony involving the use or threat of violence to a person.
... .
2. The crime for which the defendant is to be sentenced was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws, including preventing a lawful arrest by victim Officer Nathaniel Broom and hindering the probation officer's function.
We should note that in the first trial the jurors advised the judge that they were deadlocked six-to-six regarding their recommendation. The judge advised them to try to reach a decision and, if they could not, to sign a verdict form recommending life imprisonment. The jury later returned with a seven-to-five recommendation of death, and the trial judge imposed the death sentence. *62 In remanding for this new sentencing proceeding, we stated:
We do not find it appropriate to treat the jury recommendation as a life recommendation and the trial judge's sentence as a jury override, as urged by the state. There was no life recommendation in this case and the trial court did not, therefore, consider this significant factor in his sentencing decision. To now treat the jury recommendation as a life recommendation and review appellant's sentence without the benefit of the trial judge's consideration and application of the Tedder doctrine would require this Court to make an assumption as to what sentence the trial judge would have imposed if the jury had actually returned a life recommendation. We decline to do so.
Patten, 467 So.2d at 980 (footnote omitted).
Patten raises the following seven points in this appeal of his resentencing: (1) The trial court erred in refusing to submit to the jury a special verdict form; (2) he was deprived of a fair sentencing trial and due process by the prosecutor's statement to the jury that Patten should have been sentenced to death because he was guilty of an aggravating circumstance that was not yet in existence, specifically, the killing of a police officer; (3) he was denied a fair sentencing trial by the prosecutor's misconduct; (4) the trial court erred in relying on two aggravating circumstances which refer to the same aspect of Patten's conduct; (5) the trial court erred in finding that Patten's mental state gave rise to no mitigating circumstance and that the aggravating circumstances outweighed the mitigating circumstances; (6) it is in the interest of justice that Patten's sentence be modified to a life sentence because of the circumstances surrounding the sentencing proceeding in the first trial; and (7) the death penalty is cruel and unusual punishment and is unconstitutional.
In his first claim, Patten contends that Florida's death penalty procedure is unconstitutional because it does not require the sentencing jury to report in detail what decisions it reached with respect to each of the aggravating and mitigating circumstances. Patten claims that a special verdict form must be utilized so that a jury may indicate which aggravating and mitigating circumstances it found applicable and how it weighed them. We find no constitutional or statutory requirement that mandates the use of a special verdict form in death penalty cases. Accordingly, we find this claim to be without merit.
In his second and third claims, Patten asserts that the prosecutor's repeated reference to the killing of a police officer, during voir dire and the trial, constituted the presentation of a nonstatutory aggravating circumstance and, consequently, violated Patten's right to due process and a fair trial because the legislature had not yet adopted this factor as an aggravating circumstance. Subsequently, the legislature established the killing of a law enforcement officer as an aggravating circumstance.[2] We find that the prosecutor's references to the slaying of the police officer were not improper and did not deny Patten due process in this sentencing proceeding. The fact that the victim was a law enforcement officer attempting to enforce the laws during the incident was not only a necessary aspect of this factual situation but also critical for the State to establish the existing aggravating circumstance of "hindering the enforcement of laws," contained in section 921.141(5)(g), Florida Statutes (1981). Clearly, the slaying of a police officer acting in the line of duty is a hindrance to the enforcement of laws. We find that the prosecutor's reference to the killing of a police officer in this instance was allowable and did not deny Patten's right to due process or a fair trial.
Patten's fourth claim is that the jury was instructed, over defense counsel's objections, to consider the applicability of the following aggravating circumstances: (1) the capital felony was committed for the purpose of avoiding or preventing a lawful *63 arrest or effecting an escape from custody, and (2) the capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of law. Patten asked the trial court to force the State to elect between these two factors and requested that the jury be instructed on only one, in order to avoid a doubling effect. We find that this argument is without merit. In Suarez v. State, 481 So.2d 1201 (Fla. 1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2908, 90 L.Ed.2d 994 (1986), this Court held that a jury should be instructed on all aggravating factors supported by the evidence. The court stated:
The jury instructions simply give the jurors a list of arguably relevant aggravating factors from which to choose in making their assessment as to whether death was the proper sentence in light of any mitigating factors presented in the case. The judge, on the other hand, must set out the factors he finds both in aggravation and in mitigation, and it is this sentencing order which is subject to review vis-a-vis doubling.
Id. at 1209. The facts in this case clearly support an instruction on each of the challenged aggravating circumstances.[3] We note that, in his sentencing order, the trial judge, citing Suarez, expressly stated that the court specifically considered the events as one aggravating circumstance and did not give them a doubling effect in imposing the death sentence.
In his fifth claim, Patten contends that the trial court erred by finding that no mitigating circumstances existed with regard to Patten's mental state. In regard to the statutory mental health mitigating factors, one of Patten's own experts, as did the State's, stated that these factors did not apply. This is not a case where the defendant's evidence of mental health mitigating factors was unrefuted. The trial judge did find that Patten had an abused childhood and used drugs, although not to the extent claimed by the defendant. The trial judge also rejected the nonstatutory mitigating factors regarding Patten's alleged mental impairments. This rejection is supported by the evidence, including the fact that there is evidence in the record of malingering and testimony that the defendant is simply antisocial. We find no error in regard to this part of the trial judge's sentencing order.
Patten's sixth claim asserts that the death sentence should not be imposed because, when the jury became deadlocked in the first sentencing proceeding, the trial judge gave the jury an "Allen[4] charge," which resulted in a recommendation of death. In other words, Patten asks this Court to readdress the issue concerning the initial six-to-six deadlock of the jury. We resolved this issue in our prior Patten decision and decline to readdress it in this proceeding.
Patten's seventh claim concerning the constitutionality of the death penalty is without merit and has been rejected on multiple occasions by this Court and the United States Supreme Court. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Diaz v. State, 513 So.2d 1045 (Fla. 1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1022 (1988); Thomas v. State, 456 So.2d 454 (Fla. 1984); Ferguson v. State, 417 So.2d 631 (Fla. 1982); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
For the reasons expressed, we affirm the trial court's imposition of the death penalty.
It is so ordered.
SHAW, C.J. and OVERTON, McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] Section 921.141(5)(j), Florida Statutes (1987), reads as follows: "The victim of the capital felony was a law enforcement officer engaged in the performance of his official duties."
[3] We recently held, in Castro v. State, 597 So.2d 259 (Fla. 1992), that, when requested, a defendant is entitled to a limiting instruction advising the jury not to double the weight of multiple aggravating circumstances supported by a single aspect of the crime. In this case, no such instruction was requested.
[4] Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).