990 So.2d 1017 (2008)
Ricardo GONZALEZ, Appellant,
v.
STATE of Florida, Appellee.
No. SC04-225.
Supreme Court of Florida.
July 3, 2008.
Rehearing Denied September 11, 2008.
*1020 Todd G. Scher of the Law Office of Todd G. Scher, P.L., Miami Beach, FL, and Jeffrey E. Feiler of Jeffrey E. Feiler, P.A., Miami, FL, for Appellant.
Bill McCollum, Attorney General, Tallahassee, FL, and Sandra S. Jaggard, Assistant Attorney General, Miami, FL, for Appellee.
PER CURIAM.
Ricardo Gonzalez appeals an order of the circuit court denying his motion to vacate his conviction for first-degree murder and his sentence of death filed pursuant to Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm the circuit court's order denying postconviction relief.

*1021 FACTS AND PROCEDURAL HISTORY

On February 14, 1992, Ricardo Gonzalez along with codefendants Pablo San Martin, Leonardo Franqui, Fernando Fernandez, and Pablo Abreu, were charged with committing first-degree murder of a law enforcement officer; armed robbery; aggravated assault; two counts of grand theft; and two counts of burglary in connection with a January 3, 1992, bank robbery. Gonzalez was tried jointly with Franqui and San Martin. Gonzalez was convicted on all counts and sentenced to death for the murder.
The record reflects that the Kislak National Bank in North Miami, Florida, was robbed by four gunmen on January 3, 1992. The perpetrators made their getaway in two stolen grey Chevrolet Caprice cars after taking a cash box from one of the drive-in tellers. During the robbery, police officer Steven Bauer was shot and killed. Shortly after the robbery, the vehicles were found abandoned two blocks west of the bank. On January 18, 1992, Gonzalez was stopped by police after leaving his residence. He subsequently made unrecorded and recorded confessions in which he told police that Franqui planned the robbery, involved the other participants including himself in the scheme, and chose the location and date for the crime. He said that Franqui procured the two stolen Chevrolets, drove one of the cars, and supplied the gun Gonzalez used during the robbery. He further stated that Franqui was the first shooter and shot at the victim three or four times, while he shot only once. Gonzalez indicated that he shot low and believed he had only wounded the victim in the leg. Gonzalez was subsequently reinterviewed by police and, among other things, he described how Franqui had shouted at the victim not to move before shooting him.
Franqui was also questioned by police on January 18, 1992, in a series of unrecorded and recorded sessions. Franqui initially denied any involvement in the Kislak Bank robbery, but when confronted with the fact that his accomplices were in custody and had implicated him, he ultimately confessed. Franqui stated that Fernandez hatched the idea for the robbery after talking to a black male, and he had accompanied the two men to the bank a week before the robbery actually took place. He maintained that the black male friend of Fernandez had suggested the use of the two stolen cars, but denied any involvement in the theft of the vehicles. According to Franqui, San Martin, Fernandez, and Abreu stole the vehicles. Franqui admitted that he and Gonzalez were armed during the robbery, but he stated that it was Gonzalez who yelled at the victim to "freeze" when they saw him pulling out his gun. Franqui denied firing the first shot and maintained that he fired only one shot after Gonzalez had initiated gunfire.
At trial, over Gonzalez's objection, the confessions of codefendants San Martin and Franqui were introduced without deletion of their references to Gonzalez after the trial court found that their confessions "interlocked" with Gonzalez's own confession. Gonzalez was convicted on all counts, and after a penalty phase trial, the jury recommended death by a vote of seven to five. The trial court followed the jury's recommendation and sentenced Gonzalez to death. On direct appeal, Gonzalez raised four issues.[1] This Court affirmed *1022 Gonzalez's conviction, but vacated his death sentence and remanded for a new penalty phase. Gonzalez v. State, 700 So.2d 1217, 1217-18 (Fla.1997).[2]
The new penalty phase was held on August 10, 1998. Several witnesses testified for the State, including the tellers who were with Officer Bauer the morning of his murder; officers who arrived at the scene after the shooting to gather evidence and render emergency assistance to the victim; detectives who questioned the suspects and obtained both oral and taped statements from Gonzalez describing his role in the crimes; and doctors who, after examining Officer Bauer, determined that the fatal heart injury he had sustained was inflicted by the .38 revolver that Gonzalez admitted to possessing during the crime.
Gonzalez presented the testimony of several witnesses to substantiate his claims for mitigation. Family members testified that Gonzalez has a history of migraine headaches; has always been law-abiding; is a member of a loving, supportive household; and is well educated and religious. The testimony of three doctors was also presented. The prior testimony of Dr. Alan Wagschul, a board certified neurologist, was read to the jury. Dr. Wagschul testified concerning head injuries Gonzalez received, including injuries during boxing. As a result of his examination and the information received, Dr. Wagschul diagnosed Gonzalez as suffering from pugilistic encephalopathy. However, on cross-examination Dr. Wagschul stated Gonzalez performed normally on all the neurological tests. The trial court also allowed the testimony of Dr. Brad Fisher, who has done research and a thesis on future dangerousness. Dr. Fisher indicated Gonzalez was not psychotic, had no major mental disturbance, was not retarded, did not use drugs or alcohol, and did not show signs of suffering damage as a result of boxing. Dr. Fisher said Gonzalez would make a good adjustment to prison. Dr. Hyman Eisenstein, a neuropsychologist, opined that Gonzalez was under extreme mental or emotional distress at the time he committed the offenses and that he committed the crimes to get money to make his wife happy.
The jury recommended death by a vote of eight to four. The trial court followed the jurys recommendation and sentenced Gonzalez to death, finding six aggravating factors, which were merged into three factors. The three merged aggravators were: (1) prior violent felonies based on the contemporaneous convictions for armed robbery and aggravated assault; (2) murder committed during a robbery/murder committed for pecuniary gain; and (3) murder committed to avoid a lawful arrest/victim a law enforcement officer performing his duties/murder committed to hinder enforcement of laws.
These aggravating circumstances were found to outweigh the following mitigating circumstances: no significant prior criminal history; brain damage; learning disability and below-average intelligence; remorse; cooperation with authorities; life sentences given to two codefendants; and good conduct while incarcerated and potential for rehabilitation. The trial court considered but rejected the statutory mental *1023 health mitigators, the minor participation mitigator, and the nonstatutory mitigator of family background.
On direct appeal, Gonzalez raised five issues.[3] This Court rejected Gonzalez's arguments, and affirmed his conviction and sentence of death. Gonzalez v. State, 786 So.2d 559, 562-63 (Fla.2001).
In March 2003, Gonzalez filed a consolidated amended motion for postconviction relief raising seven claims. After a Huff[4] hearing, the circuit court denied an evidentiary hearing on all claims except one. The claim on which an evidentiary hearing was granted concerned counsel's presentation of the testimony of the mental health experts during the new penalty phase. The circuit court found that none of the other claims warranted an evidentiary hearing because they did not require further factual determination and could be decided based upon the existing record. After an evidentiary hearing on the one claim, on January 2, 2004, the circuit court issued an order denying all of Gonzalez's claims.

RULE 3.851 APPEAL
Gonzalez has appealed the denial of postconviction relief to this Court, raising eight issues. He contends (1) trial counsel rendered ineffective assistance during the guilt phase of trial; (2) trial counsel rendered ineffective assistance during the new penalty phase; (3) the circuit court erred in summarily denying Gonzalez's claim that newly discovered evidence of a life sentence imposed on Fernando Fernandez requires that Gonzalez receive a life sentence; (4) the circuit court erred in failing to disclose records allegedly exempt from production under Florida Rule of Criminal Procedure 3.852; (5) the circuit court erred in striking Gonzalez's original postconviction motion without permitting him leave to amend; (6) the application of the new rule 3.851 to Gonzalez violates his rights to due process and equal protection; (7) Florida's capital sentencing procedures violates Gonzalez's Sixth Amendment right to have a unanimous jury return a verdict addressing guilt of all the elements necessary for the crime of first-degree murder, in violation of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); and (8) his constitutional right against cruel and unusual punishment will be violated as he may be incompetent at the time of execution.
Gonzalez argues that trial counsel rendered ineffective assistance during the guilt and penalty phases of his trial. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient and that the deficient performance prejudiced the defendant so as to deprive the defendant of a fair trial. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (affirming the Strickland two-prong analysis for *1024 claims of ineffective assistance of counsel). As to the first prong, the defendant must establish that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052; see also Cherry v. State, 659 So.2d 1069, 1072 (Fla.1995). For the second prong, the reviewing court must determine whether there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687, 104 S.Ct. 2052.
Generally, this Court's standard of review following a denial of a postconviction claim where the trial court has conducted an evidentiary hearing accords deference to the trial court's factual findings. McLin v. State, 827 So.2d 948, 954 n. 4 (Fla.2002). "As long as the trial court's findings are supported by competent substantial evidence, `this Court will not substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court.'" Blanco v. State, 702 So.2d 1250, 1252 (Fla.1997) (quoting Demps v. State, 462 So.2d 1074, 1075 (Fla. 1984)). However, the circuit court's legal conclusions are subject to de novo review. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).
Gonzalez also contends that the circuit court erred in summarily denying several of his postconviction claims. To uphold the circuit court's summary denial of claims raised in an initial postconviction motion, an evidentiary hearing must be held whenever the movant makes a facially sufficient claim that requires a factual determination. See generally Amendments to Fla. Rules of Crim. Pro. 3.851, 772 So.2d 488, 491 n. 2 (Fla.2000); see also Booker v. State, 969 So.2d 186, 195 (Fla. 2007). Further, where no evidentiary hearing is held below, we must accept the defendant's factual allegations to the extent that they are not refuted by the record. See Lightbourne v. Dugger, 549 So.2d 1364, 1365 (Fla.1989).

Ineffective Assistance of Counsel During Guilt Phase

Failure to Object to Inflammatory Opening Argument and Evidence
Gonzalez asserts that trial counsel was ineffective for failing to object to certain portions of the State's opening argument that he contends were improper, and also for failing to object during the testimony of bank teller LaSonya Hadley.
With regard to the State's opening argument, Gonzalez points to several specific statements that he argues were improper: (1) referring to the victim as a "good natured guy"; (2) stating that the victim "liked his job and people liked him"; and (3) discussing how "bullets ripped through the body of Steve Bauer," and describing how the bullets ripped through the tissues in his body leaving his blood seeping from his body. In summarily denying this claim, the circuit court found that the statements were not improper because they were accurate and consistent with the evidence presented at trial, and further finding there was no reason for counsel to object.
Opening statements "are not evidence, and the purpose of opening argument *1025 is to outline what an attorney expects to be established by the evidence." Occhicone v. State, 570 So.2d 902, 904 (Fla. 1990) (citing Whitted v. State, 362 So.2d 668 (Fla.1978)). Further, the "control of comments is within the trial court's discretion." Occhicone, 570 So.2d at 904. We find that the prosecutor's comments during opening arguments were proper. The prosecutor began his opening statement by explaining who the victim was and what his job was and, in one brief comment, stated that the victim was a good-natured person whom people liked. Such a comment is not improper during the opening statements. The comments about how the bullets killed the victim were also not improper because they were consistent with what the evidence established during trial. The evidence presented showed that the victim was shot and killed with a gun and the bullets from the gun penetrated his body.[5]
Because the prosecutor's comments were proper, we find that counsel's failure to object did not constitute ineffective assistance. See Jones v. State, 949 So.2d 1021, 1029 (Fla.2006). Accordingly, the circuit court did not err in summarily denying the claim.
Gonzalez also argues that counsel was ineffective for failing to object when the State elicited evidence about the bank teller's relationship with the victim. The circuit court found that although the testimony was not relevant or material, and an objection on these grounds would likely have been sustained, Gonzalez was not prejudiced because of the benign nature of the testimony. We agree. Although Hadley's testimony may have been immaterial to the case, Gonzalez fails to demonstrate that counsel's failure to object to the testimony resulted in prejudice sufficient to undermine confidence in the outcome of the case. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Gonzalez fails to show that had counsel objected to such testimony, there is a reasonable probability that the jury would not have found Gonzalez guilty of the crimes charged. Because Gonzalez fails to satisfy the prejudice prong of Strickland, we need not address the deficiency prong. See Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986) (stating that a court considering a claim of ineffectiveness of trial counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied).
We affirm the circuit court's summary denial of relief on this claim.

Failure to Present Evidence
Gonzalez next contends counsel was ineffective for failing to present evidence through the testimonies of Detective Ronald Pearce and Detective LaPorte that a nine millimeter firearm and latex gloves were discovered at another scene a few blocks away from the scene of the robbery and murder. Gonzalez argues that had counsel called these two witnesses to testify, there is more than a reasonable probability of a different outcome because such evidence was relevant. We agree with the trial court that counsel's failure to call these witnesses was not ineffective assistance of counsel because no prejudice has been demonstrated.
The evidence and facts revealed that two guns were used in the robbery and murder. One of the guns was a .38 caliber and *1026 the other was a nine millimeter. Codefendant San Martin told Detective Albert Nabut that he disposed of the guns used in the crime by throwing them in a particular river. Detective Nabut testified that when he went to this location the next day with trained police divers, the divers recovered both guns. Detective Pearce testified that at the scene of the robbery and murder, the police recovered one projectile, one casing, and several fragments of projectiles. Robert Kennington, a firearms examiner, testified that he conducted the ballistics testing on the two guns recovered from the river. Kennington was also given the projectiles recovered from the victim's body by the medical examiner. Kennington testified that the two guns recovered from the river conclusively matched the casing and bullet recovered from the murder scene and the projectiles recovered from the victim's body. He also testified that the projectile fragments recovered from the crime scene were consistent with having come from the nine millimeter recovered by police at the river.
Because the evidence adduced at trial conclusively linked the two guns found in the location described by codefendant San Martin with the two guns used in the robbery and murder, the circuit court properly found that presenting the evidence of a third inoperable weapon that had no link to the crime would not have supported Gonzalez's contention that someone else committed the robbery and murder. Therefore, Gonzalez fails to demonstrate prejudice under Strickland. We affirm the circuit court's summary denial of relief on this claim.

Ineffective Assistance of Counsel During New Penalty Phase

Failure to Object to Misstatements of the Law
Gonzalez asserts that counsel was ineffective during the penalty phase for failing to object to three different alleged misstatements of the law: (1) instructing the jury that the law required a recommendation of death if the aggravating circumstances outweighed the mitigating circumstances; (2) misinforming the jury about its responsibility in the sentencing process; and (3) misinforming the jury about the burden of proof.
With regard to his first contention, Gonzalez points to several statements during the penalty phase where the jury was allegedly instructed that the law required a recommendation of death if the aggravating circumstances outweighed the mitigating circumstances. However, out of these allegedly improper misstatements, there is only one statement that was actually improper. While having a discussion with a potential juror during voir dire, the trial judge improperly stated, "The law says that if the aggravators outweigh the mitigators, then the law would require a recommendation in favor of the death penalty." The circuit court found that although counsel was deficient in failing to object to this misstatement, Gonzalez was not prejudiced because the statement was isolated and the trial judge later read the standard jury instructions, which included an accurate statement of the law.
We agree with the circuit court's findings as to both deficiency and prejudice. The judge's misstatement of the law was an isolated comment that occurred at the beginning of the penalty phase and the statement was not repeated. Additionally, at the outset of jury instructions, the trial judge informed the jury that "it is your duty . . . to render to the court an advisory sentence based upon your determination as to whether sufficient aggravating circumstances exist to justify the imposition of the death penalty and whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to *1027 exist." Therefore, Gonzalez fails to demonstrate that this one isolated misstatement undermined confidence in the outcome under Strickland. See Henyard v. State, 689 So.2d 239 (Fla.1996) (finding that the prosecutor's misstatement of the law during voir dire was harmless error because it only happened three times and the misstatement was not repeated by the trial court when instructing the jury prior to deliberations).
Gonzalez also contends that counsel's performance was deficient because he failed to object when the jury was misinformed about its responsibility in the sentencing process. The alleged misstatements that Gonzalez points to informed the jury that it was their responsibility to advise or recommend a sentence to the judge, but that the judge had the duty to impose the sentence. Gonzalez also argues that the jury verdict form was incorrectly titled "Advisory Sentence." The circuit court found the statements to the jury and the form accurate and consistent with the existing law. We agree.
The trial judge and the prosecutor properly stated the role of the jury as advisory as stated in the standard jury instructions.[6] Furthermore, this Court has repeatedly determined that the standard jury instructions that refer to the jury's role as advisory do not violate Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). See Brown v. State, 721 So.2d 274, 283 (Fla.1998) (holding that the standard jury instructions fully advise the jury of the importance of its role, correctly state the law, do not denigrate the role of the jury, and do not violate Caldwell). Accordingly, Gonzalez fails to satisfy either prong of Strickland.
Gonzalez's final contention is that counsel was ineffective in failing to object when the jury was instructed that it was Gonzalez's burden to demonstrate that the mitigators outweighed the aggravators. The comment made by the trial judge that Gonzalez refers to was: "It is your duty to follow the law . . . and to render to the court an advisory sentence based upon your determination as to whether sufficient aggravating circumstances exist to justify the imposition of the death penalty and whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist." This instruction did not address or change the burden of proof; the trial judge properly stated the law. Therefore, Gonzalez fails to demonstrate deficiency or prejudice.
Because all of Gonzalez's claims are without merit, we affirm the circuit court's summary denial of relief.

Failure to Object to Inflammatory Victim Impact Evidence
Gonzalez asserts counsel was ineffective for failing to object to alleged inflammatory victim impact evidence elicited through the testimonies of LaSonya Hadley and Michelle Watson. Gonzalez argues that their testimonies were irrelevant to the jury's consideration of the aggravators, and that counsel should have requested an instruction relating to the proper role of victim impact evidence.
Under section 921.141(7), Florida Statutes (2007), victim impact evidence is permissible.[7] The testimonies of Hadley and *1028 Watson were properly elicited to demonstrate Officer Bauer's uniqueness as an individual human being. Contrary to Gonzalez's contention, it does not matter that neither witness was a member of Office Bauer's family because section 921.141(7) does not limit victim impact evidence to family members. There is no merit to Gonzalez's claim.
Gonzalez's ineffectiveness claim based on counsel's failure to request an instruction on the use of victim impact testimony is also meritless. As we have previously held, the approval of standard instructions on a particular issue does not foreclose the parties from requesting alternative instructions on the same issue. See Kearse v. State, 770 So.2d 1119, 1132 (Fla.2000). However, nothing within this holding suggests that counsel must request special instructions. Counsel cannot be deemed deficient for not requesting the alternative instructions when the issue is adequately covered by the standard jury instructions.
Because the circuit court correctly denied this claim without an evidentiary hearing, we affirm.

Failure to Object to Improper Penalty Phase Closing Arguments
Gonzalez next questions counsel's performance because counsel did not object to several portions of the prosecutor's closing argument. He contends these arguments were improper because they were used to inflame the passions and emotions of the jury. We only address four of these instances because the other three are procedurally barred.[8] With regard to these four instances, the circuit court found that none of the comments was so prejudicial as to undermine confidence in the reliability of the jury's recommendation. We agree. When read in context, these comments were not improper and did not undermine confidence in the outcome.
With regard to closing arguments, this Court emphasized in Bertolotti v. State, 476 So.2d 130, 134 (Fla.1985), that "[t]he *1029 proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." The first alleged improper comment was made by the prosecutor at the beginning of his penalty phase closing argument. In this portion of the argument, the prosecutor displayed Officer Bauer's police badge and explained what it symbolizes. The prosecutor then discussed the significance of a police officer's duties and how killing a police officer is different from other murders.
In the penalty phase of a capital trial, the State has the burden of establishing the aggravating circumstances beyond a reasonable doubt. Three of the aggravators argued by the prosecutor were based on the victim's status as a law enforcement officer. The prosecutor argued that (1) the murder was committed to avoid a lawful arrest; (2) the victim was a law enforcement officer performing his duties; and (3) the murder was committed to hinder enforcement of the laws. Thus, in his closing argument, the prosecutor was attempting to demonstrate to the jury that these aggravators should be given great weight by emphasizing that the victim was not just another citizen, but a police officer killed while he was performing his duties. This type of comment is not improper. See Patten v. State, 598 So.2d 60 (Fla.1992) (finding that the prosecutor's references to the slaying of a police officer during voir dire and the trial was not improper and did not deny Patten due process in his sentencing proceeding because the State was attempting to establish the aggravating circumstance of "hindering the enforcement of laws").
The second comment that Gonzalez argues was improper concerns the following quotation, which the prosecutor attributed to George Bernard Shaw: "It is long and hard and painful to create a life. It is short and easy to steal the life that others have made." The prosecutor then related this quotation to the life of Officer Bauer and explained that it took the officer many years to create a life for himself, but that that life was taken from him in a matter of seconds by Gonzalez. We find that when this quotation is read in context of what the prosecutor said before and after it, it was not improper.
The third comment concerns the officer's question to two bank employees after he was shot. Officer Bauer asked them, "Are you okay?" The prosecutor emphasized these words to show that the officer was doing his job and risking his life for others. This statement was admitted into evidence during the guilt phase of the trial through the testimonies of Hadley and Watson. Therefore, the prosecutor was properly reviewing this evidence to demonstrate that the law enforcement officer aggravator had been established and that it should be given weight.
The final comment pertains to the prosecutor's statement to the jury that their responsibility "based upon all the evidence in this case, is to return a recommendation for the death penalty." In making the argument that this comment was improper, Gonzalez takes the comment out of context and misses a key phrase"based upon all the evidence in this case." Before making this comment, the prosecutor reviewed all the evidence in the case and properly asserted that, based on this evidence, death was an appropriate recommendation. See, e.g., Rimmer v. State, 825 So.2d 304 (Fla.2002) (holding that the "do the right thing" comment was not so erroneous because it was coupled with references to evidence in the record).
Because none of the comments were improper, Gonzalez fails to establish ineffective assistance of counsel under Strickland. *1030 Accordingly, we affirm the circuit court's summary denial of relief on this claim.

Improper Use of Mental Health Experts
Gonzalez argues counsel erred by presenting three mental health experts who contradicted each other. Gonzalez specifically argues that counsel should have only presented the testimony of Dr. Eisenstein and should not have presented the testimonies of Dr. Fisher and Dr. Wagshul because Dr. Fisher and Dr. Wagshul's testimonies contradicted Dr. Eisenstein's testimony. Because an evidentiary hearing was conducted on this claim, this Court gives deference to the trial court's findings to the extent that they are supported by competent, substantial evidence. See McLin v. State, 827 So.2d 948, 954 n. 4 (Fla.2002); see also Blanco v. State, 702 So.2d 1250, 1252 (Fla.1997).
Gonzalez first contends that Dr. Wagshul and Dr. Eisenstein's testimonies were inconsistent because Dr. Eisenstein testified that Gonzalez's organic brain damage caused him to act impulsively. Counsel was attempting to use this testimony to support the mitigating circumstance of extreme mental or emotional disturbance at the time defendant committed the crime. Dr. Wagshul, on the other hand, testified that although Gonzalez suffered from organic brain damage, it would not lead to the impulsive act of robbing a bank and killing someone. Gonzalez asserts that because counsel allowed these inconsistent testimonies to be presented, the trial court rejected the extreme mental or emotional disturbance mitigator.
A review of the trial court's sentencing order demonstrates that the extreme mental or emotional disturbance mitigator was rejected due to the lack of credibility of Dr. Eisenstein's own testimony and not a comparison of his testimony to the other experts. In rejecting this mitigator, the trial court thoroughly evaluated Dr. Eisenstein's findings and testimony and compared it to other evidence in the case. The trial court reviewed the different tests conducted on Gonzalez, including a personality test, which revealed that Gonzalez suffered from severe anxiety, nervousness, and impulsivity, among other characteristics. However, the trial court noted that a personality test depends on the honest responses from the defendant. It was noted that Gonzalez lied to Dr. Eisenstein about his grades in school and his proclaimed innocence of this murder. As a result, the trial court questioned the validity of the results.
The trial court also found that the facts in the record did not support Dr. Eisenstein's opinion. Gonzalez's own confession established that he was aware of the planned robbery at least ten days before the crimes were committed. The day before the crimes, Gonzalez again met with the codefendants and discussed the plans. On the day of the crime, Gonzalez and the codefendants drove the getaway car and the two stolen cars to the area of the bank early enough to make sure their cars were first in line. They then went to a bakery and waited for the bank to open. Gonzalez exited the car with his gun drawn, pointed, and ready for action. Such facts do not support Dr. Eisenstein's opinion that Gonzalez acted out of impulse. The trial court also found that despite his brain damage, Gonzalez was able to conform his conduct to the requirements of the law for every day of his life prior to the day of the crimes. Moreover, Gonzalez was able to hold different jobs for long periods of times. Because Dr. Eisenstein's opinion lacked credibility on its own, counsel cannot be deemed ineffective for calling Dr. Wagshul to testify.
*1031 Moreover, calling Dr. Wagshul to testify to support the mitigating circumstance that Gonzalez suffered from brain damage benefited Gonzalez because the trial court found and gave weight to the facts of Gonzalez's brain damage, learning disability, and below average intelligence. Counsel testified at the evidentiary hearing that if he had eliminated Dr. Wagshul's testimony, it would have been grounds for ineffective assistance of counsel for not presenting every potential statutory and nonstatutory mitigating circumstance.
Gonzalez also argues that counsel erred by presenting Dr. Fisher's testimony because it was inconsistent with Dr. Eisenstein's testimony. This claim is also without merit. Dr. Fisher was appointed to support a different mitigating circumstance that had nothing to do with organic brain damage. Dr. Fisher testified to the lack of future dangerousness and to the fact that Gonzalez would adjust well to a prison setting. Counsel used this testimony to support the mitigating circumstance of Gonzalez's lack of future dangerousness and potential for rehabilitation, which the trial court found had been reasonably established.
Because counsel made a strategic decision to present the testimonies of the three mental health experts to demonstrate different mitigating factors, counsel cannot be deemed ineffective. The circuit court properly denied relief on this claim.

Failure to Present Gonzalez's Testimony
Gonzalez contends that counsel was ineffective for failing to present his testimony to show his version of the events leading to the death of Officer Bauer. Gonzalez concedes that a colloquy was conducted by the trial court concerning his right to testify. He further concedes he ultimately indicated that he would not be testifying. Gonzalez alleges, however, that his decision to follow the advice of counsel and not testify was not voluntary because of his mental and intellectual deficits. The circuit court found that the claim was conclusively refuted by the record because the record shows that Gonzalez made a knowing and voluntary waiver of his right to testify.
When a defendant raises a claim that counsel interfered with the defendant's right to testify, the defendant must satisfy the Strickland standard to prevail on the claim. See Oisorio v. State, 676 So.2d 1363 (Fla.1996). To prove that the defendant validly waived his right to testify, the record should at least "support a finding that such a waiver was knowingly, voluntarily, and intelligently made." Lott v. State, 931 So.2d 807, 818 (Fla.2006) (quoting State v. Lewis, 838 So.2d 1102, 1112 (Fla.2002)). Although this Court has held that "a trial court does not have an affirmative duty to make a record inquiry concerning a defendant's waiver of the right to testify," this Court has stated that in order to avoid postconviction disputes, "it would be advisable for the trial court, immediately prior to the close of the defense's case, to make a record inquiry as to whether the defendant understands he has a right to testify and that it is his personal decision, after consultation with counsel, not to take the stand." Torres-Arboledo v. State, 524 So.2d 403, 411 n. 2 (Fla.1988).
In the instant case, the record conclusively demonstrates that Gonzalez knowingly, voluntarily, and intelligently waived his right to testify, and that it was his personal decision. After counsel informed the trial judge that Gonzalez was not going to testify and that it was counsel's recommendation that Gonzalez not testify, the judge conducted a colloquy with Gonzalez. During this colloquy, Gonzalez stated that he understood that he had a constitutional right to testify even if his counsel believed *1032 that he should not. He stated that he was going to follow his counsel's advice to not testify, but also stated that it was his personal decision not to testify, and counsel did not promise him anything or force him into not testifying. Additionally, there is nothing in the record to support Gonzalez's claim that he could not understand this proceeding. Brain damage and below average intelligence do not equate to a lack of voluntariness.
The colloquy before the trial court was sufficient to demonstrate that Gonzalez validly waived his right to testify.

Newly Discovered Evidence
Gonzalez contends that the circuit court erred in summarily denying his claim that newly discovered evidence of the life sentence imposed on codefendant Fernando Fernandez requires that Gonzalez's sentence be reduced to life. Gonzalez asserts that had the penalty phase jury been informed of Fernandez's life sentence, there is a reasonable probability that the jury would have recommended a life sentence for Gonzalez.
In order for newly discovered evidence to warrant postconviction relief, the defendant must satisfy two requirements. First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence. Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. See Jones v. State, 709 So.2d 512, 521 (Fla.1998) (Jones II). If the defendant is seeking to vacate a sentence, the second prong requires that the newly discovered evidence must be of a nature that it would probably yield a less severe sentence. See Jones v. State, 591 So.2d 911, 915 (Fla.1991) (Jones I). The circuit court found that Gonzalez satisfied the first prong of the test because the evidence was unknown and could not have been discovered by due diligence as this evidence did not exist until after the imposition of Gonzalez's death sentence. However, the court found that Gonzalez failed to satisfy the second prong because Fernandez and Gonzalez were not equally culpable. We agree with the circuit court and affirm the denial of relief.
Gonzalez's second penalty phase took place in August 1998. Fernandez's sentence was reduced to life by this Court while Gonzalez's direct appeal was pending. See Fernandez v. State, 730 So.2d 277 (Fla.1999). Thus, Fernandez's sentence was not known at the time of Gonzalez's second penalty phase. We find, however, that Gonzalez fails to establish that the subsequent imposition of a life sentence for Fernandez would probably yield a life sentence for him.
In certain instances, this Court has concluded that a codefendant's life sentence precludes a death sentence for the defendant. See, e.g., Slater v. State, 316 So.2d 539, 542 (Fla.1975) (holding that less culpable non-triggerman cannot receive a death sentence when the more culpable triggerman receives a life sentence). However, this Court has also found disparate treatment permissible in situations where the defendant is more culpable than the codefendant who has received a life sentence. See, e.g., Larzelere v. State, 676 So.2d 394, 406-07 (Fla.1996) (upholding death sentence where evidence showed that defendant was the dominating force behind the murder and was far more culpable than the State's two key witnesses who were not prosecuted despite involvement in the crime).
The record establishes that Gonzalez was more culpable than Fernandez. In his confession, Gonzalez said he and Franqui *1033 were the two individuals who directly participated in the actual killing of Officer Bauer. In addressing the mitigating circumstance of disparate sentencing because codefendants Abreu and San Martin received life sentences, the trial court stated that Gonzalez fired the fatal shot killing Officer Bauer, making Gonzalez's participation in the murder greater than that of the codefendants. The trial court also stated that Gonzalez was a major participant in the bank robbery and in the murder of Officer Bauer. This difference in culpability is the principal reason this Court vacated Fernandez's death sentence and remanded for imposition of a life sentence. We found that the record established that Fernandez was inside the getaway car during the robbery of the bank and the murder of Officer Bauer. See Fernandez, 730 So.2d at 283. We also found Fernandez's degree of participation in the crime to be similar to that of codefendant Abreu, who was also a getaway car driver, and codefendant San Martin, who was not armed during the robbery and murder and whose role was to take the money tray from the bank tellers and to dispose of the guns. Id. In contrast, Franqui, who shot at Officer Bauer, was also sentenced to death. In addressing Franqui's claim that the death sentence was disproportionate, this Court noted that Gonzalez also received a death sentence. See Franqui v. State, 804 So.2d 1185, 1198 (Fla.2001).
Because Gonzalez fails to demonstrate that the evidence of the subsequent imposition of a life sentence for Fernandez would probably have yielded a life sentence for Gonzalez, we affirm the circuit court's summary denial on this claim.

Failure to Disclose Public Records
As his next issue, Gonzalez contends the circuit court erred in finding certain records exempt from production. Gonzalez asserts that the type of documents requested were not subject to exemption and should have been disclosed. We disagree. The trial court's determination of whether certain documents are exempt from production is subject to an abuse of discretion standard. Johnson v. State, 904 So.2d 400, 405 (Fla.2005) (citing Mills v. State, 786 So.2d 547, 552 (Fla. 2001)). "Discretion is abused only when the trial court's decision is `arbitrary, fanciful, or unreasonable.'" Johnson, 904 So.2d at 405 (quoting White v. State, 817 So.2d 799, 806 (Fla.2002)).
Gonzalez requested various documents from the Eleventh Judicial Circuit State Attorney's Office. The circuit court conducted an in-camera inspection of the records in the five files and specifically noted what the files contained and why they were exempt. The court found that the five files contained various drafts prepared by the State for use in litigating the case. For example, one file contained notes of attorneys' meetings and conversations with witnesses, handwritten notes of opinions and impressions of attorneys during the meetings, and notes made during pretrial conferences or in preparation for trial. Another file contained handwritten and typewritten drafts of pleadings, motions, jury instructions, plea agreements, and affidavits for warrants. This Court has held that attorneys' notes and other such preliminary documents used in preparing and litigating a case are not public records. See Ragsdale v. State, 720 So.2d 203, 205 (Fla.1998); Johnson v. Butterworth, 713 So.2d 985, 987 (Fla.1998); see also Jennings v. State, 782 So.2d 853, 864-65 (Fla. 2001) (affirming order finding notes of witness interviews not to be public record).
The circuit court did not abuse its discretion in denying Gonzalez's request for production of these documents. Relief on this issue was properly denied.

*1034 State's Motion to Strike Gonzalez's Original 3.851 Motion

Gonzalez contends that the circuit court erred in granting the State's motion to strike Gonzalez's original 3.851 motion without allowing him to amend. Gonzalez's original postconviction motion was filed on July 19, 2002. The State moved to strike this motion on the basis that it was a shell motion and was not fully pled as required by the rule. The circuit court granted the State's motion to strike because the motion did not comply with the specific requirements of rule 3.851, Florida Rules of Criminal Procedure. This Court granted Gonzalez permission to file an amended 3.851 motion within a specific time period. Gonzalez now argues that because the trial court granted the State's motion to strike Gonzalez's original motion instead of granting leave to amend, the amended motion filed pursuant to this Court's order cannot relate back to the original filing. Even assuming the trial court should have allowed the defendant leave to amend,[9] Gonzalez fails to demonstrate any prejudice because he was in fact allowed to file an amended 3.851 motion and that motion was heard and determined by the trial court.

Application of the New Rule 3.851
Gonzalez contends that the new rule 3.851 violates Gonzalez's rights to due process and equal protection because it no longer permits capital defendants to file shell motions. Florida Rule of Criminal Procedure 3.851 was amended in 2001 to add a subdivision concerning the contents of these motions. See Amendments to Fla.Rules of Crim. Pro. 3.851, 3.852, & 3.993 & Fla. Rule of Jud. Admin. 2.050, 797 So.2d 1213 (Fla.2001). Rule 3.851 specifically includes a provision that the motion shall include "a detailed allegation of the factual basis for any claim for which an evidentiary hearing is sought." Fla. R.Crim. P. 3.851(e)(1)(D). This section was added to eliminate the filing of shell motions.
Gonzalez's argument really questions the constitutionality of the one-year time limit for filing postconviction motions after a defendant's conviction and sentence of death become final. We have held that the rule 3.851 as amended in 2001 does not violate a defendant's due process rights or equal protection rights. See Vining v. State, 827 So.2d 201 (Fla.2002). To the extent that Gonzalez is making an ineffective assistance of postconviction counsel claim, this Court has repeatedly rejected such a claim. See Waterhouse v. State, 792 So.2d 1176 (Fla.2001) (finding that ineffective assistance of postconviction counsel is not a cognizable claim); see also Lambrix v. State, 698 So.2d 247 (Fla.1996).
Accordingly, we affirm the circuit court's denial of relief on this claim.

Ring v. Arizona Claim

Gonzalez asserts that Florida's death penalty scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). However, both the United States Supreme Court and this Court have held that Ring does not apply retroactively. See Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004); Johnson v. State, 904 So.2d 400 (Fla.2005). Gonzalez's death sentence became final in 2001 after this *1035 Court affirmed the sentence imposed after a new penalty phase. Therefore, Gonzalez cannot rely on Ring as a basis for finding his death sentence unconstitutional. See Washington v. State, 907 So.2d 512, 514 (Fla.) (finding defendant not entitled to relief under Ring because Ring is not applied retroactively), cert. denied, 546 U.S. 1064, 126 S.Ct. 802, 163 L.Ed.2d 632 (2005). Accordingly, relief is hereby denied on this claim.

Competency to be Executed
Gonzalez concedes that the claim that he may not be competent at the time of execution is not ripe for review because he has not been found incompetent and a death warrant has not been signed. However, he contends that he is raising the issue for preservation purposes. This Court has repeatedly found that no relief is warranted on similar claims. See State v. Coney, 845 So.2d 120, 137 n. 19 (Fla. 2003) (rejecting claim that defendant was insane to be executed where he acknowledged that claim was not yet ripe and was being raised only for preservation purposes); Jones v. State, 845 So.2d 55, 74 (Fla.2003) (finding claim that defendant may be insane to be executed was "not ripe for review" where defendant had not been found incompetent and a death warrant had not been signed; noting that defendant made claim "simply to preserve it for review in the federal court system"); Hall v. Moore, 792 So.2d 447, 450 (Fla. 2001) (stating that it is premature for a death-sentenced individual to present a claim of incompetency or insanity, with regard to his execution, if a death warrant has not been signed). Gonzalez is likewise not entitled to relief on this claim.

CONCLUSION
For the reasons stated above, we affirm the circuit court's denial of postconviction relief on all claims.
It is so ordered.
QUINCE, C.J., and WELLS, ANSTEAD, PARIENTE, LEWIS, CANTERO, and BELL, JJ., concur.
NOTES
[1] The issues raised were: (1) the trial court erred in denying Gonzalez's peremptory challenges of jurors Diaz and Andani; (2) the trial court erred in denying Gonzalez's motion for severance based upon the introduction of the confessions of non-testifying codefendants Franqui and San Martin at their joint trial; (3) Gonzalez was denied an impartial hearing at his penalty phase because of the court's refusal to sever his case and to permit him to cross-examine San Martin's experts; and (4) his death sentence is disproportionate.
[2] The State and Gonzalez filed for certiorari with the United States Supreme Court; both petitions were denied. See Florida v. Gonzalez, 523 U.S. 1145, 118 S.Ct. 1856, 140 L.Ed.2d 1104 (1998); Gonzalez v. Florida, 523 U.S. 1062, 118 S.Ct. 1393, 140 L.Ed.2d 652 (1998).
[3] The five issues raised were: (1) this Court improperly used a harmless error analysis based on the hearsay rule rather than one based on the Confrontation Clause to determine whether or not the admission of codefendant statements was proper during Gonzalez's trial; (2) using the victim's status as a police officer as an aggravator as well as increasing the penalty for homicide from twenty-five years without eligibility for release to life without parole constitutes impermissible doubling; (3) substantial organic and behavioral support existed for the expert opinion that was erroneously rejected by the court when it considered the mental distress mitigator; (4) the prosecutor's passionate closing and impermissible personal statements were error; and (5) proportionality analysis requires that Gonzalez's death sentence be vacated.
[4] Huff v. State, 622 So.2d 982 (Fla.1993).
[5] Codefendant Fernando Fernandez raised a similar claim in his direct appeal. Fernandez v. State, 730 So.2d 277 (Fla.1999). Fernandez argued that the prosecutor attempted to inflame the jury by "describing the bullet's trajectory through the victim's body." Id. at 281. We held that the trial court did not abuse its discretion in allowing the statements because they were later supported by the evidence presented. Id.
[6] The standard jury instructions states that the "[f]inal decision as to what punishment shall be imposed rests solely with the judge of this court; however, the law requires that you, the jury, render to the court an advisory sentence as to what punishment should be imposed upon the defendant." See Fla.Std. Jury Instr. (Crim.) 7.11.
[7] This section provides:

Once the prosecution has provided evidence of the existence of one or more aggravating circumstances as described in subsection (5), the prosecution may introduce, and subsequently argue, victim impact evidence to the jury. Such evidence shall be designed to demonstrate the victim's uniqueness as an individual human being and the resultant loss to the community's members by the victim's death. Characterizations and opinions about the crime, the defendant, and the appropriate sentence shall not be permitted as a part of victim impact evidence.
[8] The three instances that are now procedurally barred were raised in Gonzalez's direct appeal after his new penalty phase. Gonzalez first argued that while discussing Gonzalez's duress argument, the prosecutor mocked the defense experts. This Court found that because counsel did not object, the claim was not preserved for appellate review. Gonzalez also argued that the prosecutor made an improper statement as he attempted to refute a mitigation argument offered by the defense. This Court found that the claim was not preserved because the objection at trial was not based on the same grounds as the grounds raised on direct appeal. The last argument raised by Gonzalez dealt with the prosecutor's comments to the jury telling them to use their common sense in evaluating the evidence presented. This Court again found that the claim was not preserved because counsel failed to object. However, with regard to all three claims, this Court concluded, "Gonzalez has failed to demonstrate that the comments either individually or collectively amount to fundamental error so as to entitle him to any relief." See Gonzalez, 786 So.2d at 569. Because Gonzalez failed to show that the comments amounted to fundamental error on direct appeal, Gonzalez fails to demonstrate that counsel's failure to object to the comments resulted in prejudice under Strickland. Chandler v. State, 848 So.2d 1031, 1046 (Fla. 2003) ("Because Chandler could not show the comments were fundamental error on direct appeal, he likewise cannot show that trial counsel's failure to object to the comments resulted in prejudice sufficient to undermine the outcome of the case under the prejudice prong of the Strickland test.").
[9] In Bryant v. State, 901 So.2d 810 (Fla.2005), we said that by finding that Bryant's 3.851 motion should not have been stricken without leave to amend, we were not condoning or encouraging the practice of filing shell postconviction motions. Indeed in the Bryant case the sixty-nine page motion was not a shell motion but did have some technical deficiencies. The motion in this case, however, was a true shell motion filed simply to comply with the time limitations.